PROYOSTY, J.
Plaintiffs sue to recover possession of premises heretofore leased by them to defendant. The grounds are that the lease, which was for three years, has expired, or if not that at all events defendant has forfeited it by failure to pay the rent promptly, and again, by subleasing a part of the premises in violation of an express stipulation to the contrary in the lease. The property consists of one side of a double building. The plaintiffs are Samuel Dreyfuss, and the widow and the heirs of Jules Dreyfuss. They were represented throughout the matters involved in this suit by Jules Dreyfuss, one of the Jules Dreyfuss heirs. We gather that Samuel Dreyfuss owns a half interest and the other plaintiffs the other half interest.
The question of whether the lease has expired or not depends upon whether the defendant has a right of renewal at the same rental; and the existence of this right depends, in turn, upon whether a certain inter *567 lineation in the lease was inserted before or after defendant had signed it.
The lease as appearing in the record reads that it is to “end on 1st Aug. 1916, with privilege of refusal at the end of that time at rental to Be agreed upon.” This''italicized clause is said by defendant to have been added after the lease had been signed and without defendant’s consent or knowledge. It appears in the contract as an interlineation in handwriting; the rest of the contract being typewritten. The contract was in duplicate, and a copy was left with defendant, and the interlineation appears in both copies, but defendant says that it was not there when the contract was signed by defendant; that Mr. Albert Dreyfuss who brought the two copies to defendant for signature took away both copies for having them signed by Mr. Samuel Dreyfuss, and that when he returned one of them to defendant, defendant simply filed it away without examination, and discovered only much later that the interlineation had been made. Mr. Gribble, former president of defendant company, so testifies. Mr. Roberts, present president of the defendant company, testifies that he and other directors, including Mr. Gribble, having had occasion to examine this lease at a directors’ meeting, Mr. Gribble was much surprised at seeing this interlineation in it.
Mr. Albert Dreyfuss testifies positively that this clause was in the lease when defendant signed it. Mr. Samuel Dreyfuss testified that no one else had signed the lease when it was brought to him by Mr. Albert Dreyfuss for signature, and that he refused to sign it unless this clause was inserted in it; and that he signed it with the understanding that this clause would be inserted.
Mr. Gribble testified that when the lease was brought to him by Mr. Albert Dreyfuss for signature, it was not; signed by Mr. Samuel Dreyfuss; that Mr. Samuel Dreyfuss was at that time absent from the city.
In that statement Mr. Gribble is corroborated by Mr. Houston Barnes, who was a clerk in the office of the defendant company at the time the lease 'was signed, and was a witness to the signing of it by Mr. Gribble, and himself signed it as a witness.
But the judge of the city court before whom this case was first tried, and the attorney who represented plaintiffs at that trial, testified that on that occasion Mr. Barnes testified that when the lease was presented to Mr. Gribble for signature it had been signed by all the other parties.
[1,2] The burden lay upon plaintiffs to show that this interlineation was in the lease at the time it was signed, but that burden is discharged, .we think, by the strong inference resulting from the fact that a duplicate of it was in the possession of defendant without complaint, until this question of renewal came up at the end of three years. Mr. Gribble says that when at the directors’ meeting this interlineation was discovered he wrote a letter to the plaintiffs about it; but he did not produce this letter. “I tried to locate it,” he says, “but I have not had time to look for it.” I-Ie adds that the letter was never answered. Mr. Roberts testifies that when this discovery was made Mr. Gribble was instructed to write a letter to plaintiffs about it, and that the attorney of the defendant company was consulted, and that the attorney had them make the notation that is on the bottom of the lease. But this notation is not produced. Nor is the attorney. The contention of defendant is that this interlineation was inserted surreptitiously, or, in other words, fraudulently. A fraud is not lightly to be supposed, and especially one which would have been so likely to be discovered as this one with which defendant thus charges plaintiffs.
[3] However, if we accept defendant’s con- • *569 tention that the lease had not been signed by Mr. Samuel Dreyfuss at the time defendant signed it, what then? Defendant does not contend that Mr. Samuel Dreyfuss consented to sigh the lease without this clause in it, and could not so contend, since the only evidence in the record on that point is that of the two Dreyfusses positively to the contrary. The situation would then be that when the lease was presented to Samuel Dreyfuss, half owner of the building, for signature, he refused to sign until this clause had been inserted, and that this clause was inserted in order that his signature might he obtained. Of course, this is contrary to the testimony of Samuel Dreyfuss, who says that he was the first to sign the lease, that he signed it only on the condition that this clause should be inserted; but we are supposing that defendant is correct in the contention that the contract had not been signed by Samuel Dreyfuss when it was presented to defendant for signature. On the assumption which we thus make, there would have been no lease at all, for the evidence shows that the agreement of the parties was that their contract should be reduced to writing, and our law is well settled that, when parties thus agree, the contract is not perfected — there is no contract — until the writing has been duly executed.
The record in this case fails to show, we think, that the defendant has a contract without this clause in it, because it fails to show that Samuel Dreyfuss, one of the co-owners, ever consented to the contract without this clause in it. True, defendant produces a contract signed by Samuel Dreyfuss, but the contract thus produced contains this clause.
[4] But if defendant had a lease without this clause in it, we agree with the learned district judge that defendant forfeited it by violating the clause against sublease. The record shows that the plaintiffs approved the leasing of the ground floor of the building, but not of the upper floor. The leasing of .this upper floor was a the lease, and was never condoned by plaintiffs. The attempt of defendant to show that the lease of this upper floor was to the same party as that of the ground floor, and that by continuing to receive payment of rent after knowledge of this lease the plaintiffs ratified it, fails entirely, we think, in the light of the evidence. The lease of the ground floor was to a company in which Mr. Robbins was interested ; that of the upper floor was to Mr. Robbins individually, and for an entirely different purpose — the one for a garage business, the other for habitation, or rooming. The acquiescence of plaintiffs in the sublease was only of the ground floor.
[5] By refusing to' consider plaintiffs’ repeated offers to agree upon a price for renewal, the defendant has lost, we think, the right to renew.
[6-8] Defendant alleges that at the time the lease was made the building was “in a bad and dilapidated condition and it became necessary to repair and rebuild a portion of same at an expense of $2,532.50, for which defendant is entitled to have judgment.” Mr. Roberts, president of the defendant company, speaks, in his testimony, of an itemized statement of the expenses thus said to have been incurred. But except some testimony relative to an opening that was bricked up and certain partitions that were installed, no proof is made of what these repairs and this rebuilding consisted of, except that a gasoline supply tank is shown to have been put under the sidewalk, and, we infer, a gasoline supply station established. The learned counsel for defendant quote articles 2693 and 2710, C. O., to the effect that the lessor is bound to make necessary repairs. But the closing up of openings, and the installation of wooden partitions cannot be classed as ordinary repairs. Counsel also invoke the principle that one person should not enrich himself at the expense of another. But the record fails to show wherein the lessor in this *571 ease would be enriched at the expense of the lessee; and a lessee knows when he makes improvements that his right at the termination of the lease will not be to claim compensation for them, hut only to remove them, in case it can be done, and yet the premises he left in the condition in which they were when leased, and if they have been made with lime and cement, in the event the lessor does elect to retain them. O. 0. 2726. In so far as these expenses may have been for repairs, plaintiffs are under no liability, as plaintiffs were not put in default. O. 0. 2694; Favrot v. Mettler, 21 La. Ann. 220; Mullen v. Kerlec, 115 La. 783, 40 South. 46.
[9] This suit was first filed in the city court of the city of Shreveport where the property in question is situated. An exception to the jurisdiction of that court was filed and sustained, and the suit was dismissed. The present suit was then filed. Defendant excepted in limine that the suit should be dismissed because the plaintiffs had not paid the costs of the city court. That exception is based upon article 492 of C. P., w-hich reads:
“After discontinuing a suit, the plaintiff may bring the action anew: Provided he has paid the cost of the first suit.”
A suit cannot be said to have been “discontinued by the plaintiff” when it has been dismissed at the instance of defendant. The exception was properly overruled.
Judgment affirmed.
LECHE, J., takes no part.