MRS. H. M. STAUFFER & al

            vs

MRS. C. E. HARTZ,
    Appellant.

No. 8043

December 6th, 1920.

Mrs.H. L. Stauffer & al

vs                                    No. 8043

Mrs. C. E. Hartz,
         Appellant.

Appeal from Civil District Court, Hon. E. K.
Skinner, Judge.

CHARLES F. CLAIBORNE, JUDGE.

This is an ejectment suit.

Petitioners aver that their mother, Mrs.Maury, leased
to defendant, Widow C. E. Hartz,the premises No.1312 First
Street for a term of twelve months, commencing on October 1st,
1919 and ending on September 30th, 1920; that their mother
died July 6th, 1920 leaving petitioners as her only heirs;
that they gave to Mrs. Hartz legal notice to vacate said pre-
mises at the expiration of her lease, which she has failed to
do; they pray for judgment condemning the said Mrs. Hartz to
vacate said premises and to deliver possession of the same
to them.

For answer, defendant admitted the lease and the notice
to vacate; she averred that she did not vacate in accordance
with said notice because she has a valid lease to September
30th, 1921, and that she is entitled to remain in said pre-
mises up to that date; she further averred that

"on or about August 12th, 1919, she rented the pre-
mises 1312 First Street from October 1st, 1919 to
September 30th, 1920, through Leo Fellman, agent of
Mrs. J.H.Maury, for $85 a month; that about July 7th,
1920 she received notice from said Fellman that the
rent for a new lease had been fixed at $100 a month,
said Fellman, agent, at the same time, requesting her
to remain as tenant; that she accepted the terms pro-
posed to her, and on or about July 8th, 1920 signed
leases in duplicate, renting said property from Octo-
ber 1st, 1920 to September 30th, 1921; that she signed
and executed rent notes in accordance with said leases,
all as prepared by said Fellman, so acting as requested;

546

that this was done at the office of said Fellman, and
said leases and notes were delivered to him and received
by him as agent, it being agreed that he would promptly
sign said leases and deliver one to defendant; that,
thereupon, the agreement and contract between said Fell-
man, agent, and this defendant was and became closed, and
defendant left the office of said Fellman; that after de-
fendant had signed said leases and notes and the same
had been left with and accepted by said Fellman, as agent,
the latter was notified that said Mrs. J. H. Maury had
departed this life and that the property in question was
not to be leased; that said Fellman notified this defen-
dant of said facts, but retained said leases and all of
said rent notes which had been signed by this defendant;
that in all said matters both said Fellman, as agent,
and this defendant acted and were in good faith; that
said contract of lease is and was a valid contract and
is binding upon the succession and heirs of said Mrs. E.
H. Maury; that defendant files herewith, as part of this
answer and return, a copy of said lease, marked "A B",
and that defendant is entitled, under the law and under
said lease, to hold and retain said premises, as tenant,
until September 30th, 1921, subject to the terms and con-
ditions thereof. "

Defendant also denied that plaintiffs were entitled to proceed
by summary process, and she prayed for judgment in her favor.

There was judgment for plaintiff, and defendant has
appealed.

There is no dispute as to the facts; the only question
is, do they establish a renewal of the lease after September 30th,
1920?

The documentary evidence establishes a lease to defen-
dant by Leo Fellman, agent for Mrs. J. H. Maury, signed by Mrs.
Helen D. Maury, ending September 30th, 1920; a notice to vacate
addressed to Mrs.C. E. Hartz, dated September 18th, 1920, and
delivered September 20th, 1920.

The defendant offered in evidence a letter dated July

547

6th, 1920 signed Leo Fellman by Louis P. Eaves, addressed to Mrs. C. E. Hartz, reminding her that her lease would expire on the last day of September, and that their client had fixed the rental at $100 per month under a new lease; expressing the hope that she would remain, and requesting an immediate answer.

Second: A lease dated July 8th, 1920 by Leo Fellman, agent for Mrs. J. H. Maury, to Mrs.Widow C. E. Hartz for the premises 1312 First Street for twelve months commencing October 1st, 1920 and ending September 30th, 1921 at $100 per month signed by Mrs.C. E. Hartz.

Third: A letter dated July 8th, 1920 addressed to Leo Fellman in the following words:

"Owing to the death of Mrs. James J. Maury, owner of the property No. 1312 First Street, rented through *you,* her daughters, Mrs. Randolph Lyons and Mrs. I. H. Stauffer, have decided not to renew the lease of this property, I, therefore, wish to notify you that they will withdraw this property from your hands for rental and sale temporarily. Kindly consider this as a formal notice of withdrawal.

Yours truly,

"Signed"    I. H. Stauffer "

A fourth letter dated July 9th, 1920 addressed to Mr. I. H. Stauffer as follows:

"We hasten to acknowledge receipt of your favor of the 8th inst., and to say that a few days ago, pursuant to instructions received from Mrs. Randolph Lyons, we agreed to renew lease of the premises No. 1312 First Street at the additional rental of $100.00 per month. Accordingly leases were drawn by this office and have been signed by the tenant".

Yours very truly,

"Signed"    Leo Fellman

by L. P. Eaves "

Mrs. Hartz testified that she had been occupying the premises 1312 since October 1918, she leased them from Mr. Fellman through Mr. Eaves; she did not deal with Mrs. Maury;

she dealth always with Mr. Eaves; on receipt of the letter of July 6th, she called on Mr. Eaves on July 8th. and signed two leases and twelve notes; the next day she was notified by phone by Mr. Fellman that he had bad news and that he did not think he could close and send her the lease; this was the third lease Eaves had signed for her, for that property.

Louis P. Eaves testified that he was connected with Leo Fellman; he made the lease to Mrs. Hartz in 1919; he wrote the letter dated July 6th, 1920; in answer to the letter Mrs. Hartz phoned to him that she would call the next day; she called and signed the lease and the twelve notes; he did not sign the lease on account of the letter of I. H. Stauffer, husband of one of the plaintiffs, dated July 8th; but he answered the letter on receipt of it on July 9th; he had been notified by Mrs. Randolph Lyons to rent the property at $100 a month; Mrs. Lyons had not been acting for her mother prior to that; he did not have written authority from Mrs. Maury or from either of the plaintiffs to sign a lease for them; he never signs a lease without such authority; the usual form of authorization he requires is in these words printed at the top of the lease:

"I hereby authorize and empower my agent, Leo Fellman, with full power of substitution to enter into and sign, or if already signed, hereby ratify and confirm, lease reading as follows, bearing on property described herein, which property I own";

then follows, on the same page, the lease made by Leo Fellman; no such authority was given him to make the lease in suit to Mrs. Hartz from 1920 to 1921; at the time he wrote the letter of July 6th, it was contemplated by him that a lease should be signed by Mrs. Maury.

At this moment Mrs. Hartz is recalled as a witness and she swears that Mr. Eaves did not tell her that he contemplated having the lease signed by Mrs. Maury.

Louis P. Eaves recalled continues: Mrs. Lyons phoned to him about July 1st, stating that her mother was quite ill; that they just returned from Mobile; and that she wanted to talk to him about the new lease for 1312 First Street; he ad-

vised a new lease at $100 a month; she said she thought $100
fair, and that he

> "should close the lease with the tenant for another
> year, that is all;"

he has had charge of the property for the past five or six
years and has gone through the same procedure each year, pre-
paring the lease, and having the notes signed, and sending out
the lease authorization and have it signed and complete the
lease; he does not sign any lease without a written authoriza-
tion; he never received any written authorization in this case.

Mrs. Lyons testified that her mother, Mrs. Maury, died
July 6th, 1920; for about six months prior to her death she
had been out of her mind; she had no authority to act for her
mother; she phoned to Mr. Eaves to find out if Mrs. Hartz was
willing to pay $100 rental instead of $85; Mr. Eaves had a dif-
ferent impression of that conversation than she has; her idea
was simply for him to find out if Mrs. Hartz would pay $100;
she did not intend that a lease should be drawn up as she had
no authority to lease, and her mother was not in a mental con-
dition to do so; Mrs. Hartz paid her notes for the 1919 - 1920
lease in the Whitney Bank, and the Bank turned the money over
to them; Mr. Stauffer wrote that letter after full consultation
with all of them, including her sister, Mrs. Stauffer.

Dr. Randolph Lyons says that Mrs. Maury has been mental-
ly ill since January 1920, and not in a condition to transact
business; during that time her family had to manage her affairs
and attend to her business.

I. H. Stauffer testified that the daughters of Mrs.
Maury withdrew the rent money from the Whitney Bank, and he
sent it to Mobile to defray the expenses of Mrs. Maury.

In denial of defendant's claim to a lease plaintiff
gives two reasons:  1o  That Fellman was not authorized to
make a lease, and  2o  that inasmuch as it was contemplated
that there should be a written lease there was no contract un-
til the lease was written and signed by both parties.

1o  The evidence satisfies us that Fellman had authority
to make the lease.  He was a real estate agent; his business

was that of renting property; the property had been put in his charge for rent for several years; he had leased it to the defendant the year previous; he was clothed with apparent authority to lease the property:

C. C. 3000(2969):

"Powers granted to persons who exercise a profession, or fulfill certain functions, of doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandatories exercise".

"The principal is bound by all the acts of his agent within the scope of the authority which he held him out to the world to possess". Henderson vs RRd., 3 Ct.App.,43.

"Where an owner has entrusted his property to a general agent as a factor or consignee in the habit of selling such property, he is estopped from claiming the property in the hands of an innocent purchaser". Moore vs Lambeth. 5 A., 66.

See also 13 A., 453; 21 C.J.,1172, 1176.

But we think the testimony of Eaves establishes that he was authorized to lease this property by Mrs. Lyons, and that Mrs. Lyons acted with the knowledge of Mrs. Stauffer. A lease need not be in writing.

C.C., 2683 (2653):

"Leases may be made either by written or verbal contract".

The authority to make leases may therefore be verbal as well as written. *His authority was withdrawn after he had acted under it* —

Nor is it necessary to be an owner of property to lease it. Any one in possession of property may assume the obligations of lessor by leasing property. C. C.,2681 (2651); C.C., 2682 (2652); 8 R., 211; 5 A., 36. The plaintiffs, whether owners or not, having authorized the lease of the property, cannot repudiate their action. Any title acquired by a vendor inures to the benefit of his vendee; so of a lessor.

The letter of I.H.Stauffer is an affirmance of Fellman's authority to lease. It was written after consultation with all the owners, and with their knowledge and approval. He notifies

Fellman that he withdraws the property from his hands for rental because they have decided not to renew the lease. We, therefore, conclude that Fellman was authorized to lease this property and that he did lease it, unless the signature of himself or of the owners was necessary to complete the contract.

2o In the early history of our Courts the jurisprudence was that a contract which was to be reduced to writing was not complete until written and signed. 1 N.S., 420; 4 La., 80; 2 H. D., 1001; 2 L.D., 470; No.4; 28 A., 31; 30 A., 119; 115 La. , 810; 142 La., 569; 12 Ct.App., 366; 13 Corpus Juris 370 & 249; 116 La., 337.

But later cases have modified the stringency of the rule, and in them, the determinative question arose, was the verbal contract complete before writing and signing? 24 A.,433.

If it was, the verbal contract was binding without the writing. 30 A., 50 quoting Zacharic 2 to 466 note; 30 A., 117; Carlin vs Harding, 10 La., 225; 52 A., 424; 116 La.,338.

If it was not, then there was no contract until the minds of the parties met in a writing signed by both. 28 A., 33; 30 A., 321; 2 Tropling Louage No.106; 1 Duvergier No.167; 45 A., 530; 52 A., 424; 106 La., 309; 51 A., 1729.

In the Woodville case, 115 La., 810, the Court said on p 814:

"the point is that something more is to be done before the contemplated contract is to be considered completed".

After a careful examination of the authorities, this Court in De Soto Building Co. vs Kohnstarn No. 7627 wrote this syllabus:

"A verbal agreement between parties where their minds have met upon all essential details constitutes a contract between them and binds them at once, although they may have agreed that they would thereafter execute a formal instrument containing the terms of their present agreement unless it appears that it was the will of the parties that they should be bound only if and when the formal instrument was executed".

This opinion was in line with L-roussini vs Merlein, 52 A., 424, and other cases cited above.

In the De Soto Building case only the terms of the lease had been agreed on; but no lease had been ~~written and~~ signed. In the case under consideration, the lease had been signed by the defendant and 12 notes signed. upon a blank form supplied by Leo Fellman. It contained all the requisites of a lease, the thing, the price, and the C.C. 2670 (2640) — consent. It was a complete contract with nothing to add, save the signature of the lessor. The contract was not dependant upon that for its completion, and constituted therefore a perfect lease without the written and signed lease.

The judgment is therefore reversed and it is now ordered that there be judgment in favor of defendant rejecting plaintiff's demand at their cost.

Judgment reversed.

December 6th, 1920.