**DAVIS v. McCONNELL. ***
No. 4439.

Court of Appeal of Louisiana, Second Circuit.
Feb. 6, 1933.

Polk & Robinson, of Alexandria, for appellant.

White, Holloman & White, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff and defendant entered into a lease contract, which is embodied in a letter from defendant to plaintiff, as follows:

"In line with your request we deliver to your care, for your own use, the following described equipment:

"One 40 H. P. Lambert Steam Engine and Boiler, One concrete pile follower block.

"This equipment is rented to you on a monthly basis for the consideration of $155.00 per month, rent, to be paid in advance, starts November 17th, 1931, and continues until equipment is returned to us at our Warehouse, Alexandria, La.

"It is agreed that you are to pay the freight or drayage both ways on this equipment and are to return same to us in as good condition as when received by you, usual wear and tear excepted. It is guaranteed to be in good running condition when delivered to you.

"It is further agreed that should you pay any month's rent in advance and then return the equipment before the expiration of that month, then you are only to pay for that time the equipment was in your possession during that month at the rate of $6.00 per day and the balance, if any, will be immediately refunded to you, it being understood, however, that no part of the first month's rental is to be refunded.

"This letter of agreement is made in duplicate originals, one copy to be retained by you and one copy to be signed by you and returned to us."

It was subsequently agreed by the parties that the rental on the leased chattels would begin to run with delivery, and delivery was made to plaintiff on December 6, 1931, at Tullos, La.

On the morning following the day of delivery, plaintiff's crew made a fire in the furnace or fire box of the boiler, and, when steam pressure was applied, it was discovered that there were leaks through what is called the "mud rings," and a small quantity of water was escaping. This was reported to Mr. Walker, plaintiff's superintendent, who authorized the use of the boiler, notwithstanding its defective condition, thinking that perhaps the leaks would fill and the leakage cease, as he had known this to happen in other cases of a similar nature. Sufficient steam pressure was generated to enable the boiler to pull itself and equipment to the site of an overpass concrete bridge plaintiff was building for the Louisiana highway commission, at which place the boiler and other leased chattels were needed to drive concrete piling to support the bridge, 38 in number. The defect in the boiler continued to give more or less trouble as the work progressed, and, while driving the eighth or ninth piling, on December 23d, the water escapage suddenly increased in volume and extinguished the fire in the furnace. Work stopped as a result of this situation, and attention was then directed towards getting the boiler repaired, at least to an extent that the balance of the piling might be driven. A machinist, supposed to be competent in such a case, was engaged to repair the defects, and two unsuccessful attempts at welding were made. It appears that the fabric of the boiler about the site of these leaks had corroded from long use to such an extent that it was very thin and had become porous, and, when steam pressure sufficient to lift and drive piling was applied, the water would be

forced through these pores. The fabric was so thin and so crystalized that it did not support the weld.

Up to this time, defendant had not been advised of the defects in the boiler, but on December 24th, plaintiff wired defendant as follows:

"Mud rings of boiler rotted. Advise."

It does not appear that any reply was made to this telegram, and on December 26th, plaintiff wired defendant:

"Defects developed in your boiler at Tullos render it useless. Have tried to remedy them without avail. Walker advises can find only negro at your place who doesn't know whereabouts anyone in authority. Job must proceed without further delay so unless you communicate with Walker at Tullos or Rochelle Hotel by three o'clock tomorrow Sunday afternoon and arrange matters his satisfaction shall send other boiler or complete hoist and hold you for all rental transportation and repair expenses account defective boiler."

This wire was confirmed by letter the following day, and on this day defendant sent the following telegram to plaintiff:

"Unable get in touch your Mr. Walker today. Our man be in Tullos tomorrow and make satisfactory arrangements in regard to boiler."

Plaintiff then wrote defendant on December 28th on the boiler subject, where the following appears:

"Shortly after your message was received, Mr. Walker phoned me that your man had been to Tullos and had arranged to send him another boiler from Alexandria this aftternoon. I sincerely trust that there will be no delay in the matter as the loss of time thus far has been rather expensive.

"Of course, I shall expect you to reimburse me for such expenses as I have been put to in an endeavor to get the boiler into working condition and for the cost of changing the boiler for the new one you propose to send."

And on the same day the following wire was sent to plaintiff by defendant:

"Unable to get boiler out today. Will deliver to you at Tullos tomorrow."

Defendant's representative, in view of his actions, must have thought the boiler not reparable. The substitute boiler was not delivered, in keeping with this promise, so plaintiff wired defendant on December 29th thus:

"Walker wires boiler promised not yet delivered Tullos. If it is not delivered there by ten o'clock tomorrow Wednesday morning shall ship other hoist from here and hold you for expenses as specified my wire 26th. Can brook no further delay."

This message was confirmed by plaintiff's letter of same day from New Orleans.

Defendant did not make delivery of the promised boiler, and plaintiff leased one in New Orleans and sent it to his work at Tullos by truck. On January 11th he wrote the following letter to defendant:

"My foreman at Tullos has just advised me that on Thursday morning the 7th inst., he got started again with your hoist it having been idle due to the boiler trouble about which we have had numerous communications since the 23d ult.

"We therefore lost fourteen days with this hoist and the follower block and the expiration of the month for which you were paid in advance will consequently be extended for this length of time.

"After your failure to furnish the boiler which you promised to send to Mr. Walker, he secured a smaller one from the Tremont Lumber Company, desiring to keep down the expenses incident to your boiler's failure and thinking it possible to make the smaller one do.

"It would not answer, however, and finally on the 4th inst., I sent by truck from here another boiler which I rented from the Southern States Equipment Company at a minimum rental of $100.00, time not to exceed one month. This boiler was delivered to the job and set up on your hoist and was ready for work on the morning of the 7th inst.

"I shall make up in a day or two a full statement of all expenses incident to the failure of your boiler and I shall ask you to remit me promptly to cover."

This letter was sent by registered mail. He again wrote defendant on January 14th, inclosing two bills, totaling $396.33, the amount herein sued for, covering all expenses and losses sustained by him in connection with the trouble and delay occasioned by the defendant's failure to supply a good boiler, and demanded payment thereof.

On January 18th plaintiff wrote defendant a letter as follows:

"Please be advised that we have this day, at Tullos, La., finished with your Lambert Hoist and your follower block, the monthly rental time for the use of which expires tomorrow.

"We shall return the follower block to you tomorrow and shall proceed to at once remove the boiler we rented from the Southern States Equipment Company here from the hoist and replace thereon your boiler which failed as previously advised you. It will probably require two days time in which to change the boiler, which time is not chargeable to me."

The follower block was delivered to defendant, in keeping with the above letter, and on January 22d plaintiff wrote defendant:

"Please be advised that having finished with your hoist at Tullos, La., on the 17th inst., we removed therefrom the boiler which was rented from the Southern States Equipment Company here on the 20th inst., and I am now ready to return the hoist with your defective boiler to you.

"Because of the fact that the handling of this equipment can be more readily and economically accomplished with the boiler separate, we have not replaced your boiler thereon, but are prepared to do this, if you desire, immediately on the return of the hoist to your yard. However, your attention is called to the fact that the expense of replacing your boiler is chargeable to you and the boiler cannot be repaired while in place on the hoist.

"You are reminded that until this boiler is put in operating shape, the hoist is of no use whatever to me, or to anyone else."

This closed the correspondence on the subject. The hoist and boiler were not returned to defendant, but on February 15, 1932, were attached by the sheriff of La Salle parish under writ issued in this suit.

After the unsuccessful efforts to repair defects in defendant's boiler, plaintiff leased a 30 horse power boiler from the Tremont Lumber Company and installed it in place of defendant's, but it immediately proved inadequate for the purposes desired, being of too small horse power, and it was returned to the owner. This experiment entailed some expense.

On February 15, 1932, plaintiff instituted this suit in rem against defendant, he being a nonresident of the state, and caused to be attached the Lambert hoist, with boiler, then located at Tullos. This suit is on an account of expenses incurred by plaintiff from December 23d to January 6th, inclusive, as a result of the defective condition of the boiler. It includes charges for time and labor employed in removing the defective boiler and installing the one leased in and trucked from New Orleans, fittings and materials necessary to said installations, wages of employees for fourteen days' loss of time, and rental price of the New Orleans boiler and expense of transporting it to and from Tullos.

Defendant appeared through counsel and answered. He admitted making the lease contract in question, but denied liability to plaintiff to any extent. He averred that plaintiff has not delivered back to him the leased chattels, as he was obliged to do by the lease agreement. He reconvened and sued for rent, as stipulated in the contract, for the months ending February 6th and March 6th, and for the same rental per month until the leased property has been delivered to him.

The lower court gave judgment for plaintiff for $340.50, sustained the writ of attachment, and gave defendant judgment for $125 in reconvention. Defendant perfected a suspensive appeal, and plaintiff has answered the appeal praying that the judgment in his favor be increased to $396.33, and that defendant's reconventional demand be rejected.

The reasons of the trial judge for his judgment are not in the record, and neither counsel discuss or refer to such reasons in their briefs. There is little, if any, dispute about the facts of the case, and the question for decision is essentially one of law.

There was no test made of the boiler before it was shipped from defendant's warehouse in Alexandria, to plaintiff, at Tullos. The boiler was evidently very old. Mr. Carbo, a machinist at Alexandria, said he had been working on it for possibly two years. Defendant was well aware of the purposes for which plaintiff leased the boiler and other equipment from him.

■■ Plaintiff stands upon the warranty clause of the lease contract, "it is guaranteed to be in good running condition when delivered to you," and on the provisions of articles 2692 and 2695 of the Civil Code:

"*Lessor's implied obligations.*—The lessor is bound from the very nature of the contract, and without any clause to that effect: * * *

"2. To maintain the thing in a condition such as to serve for the use for which it is hired."

"2695. *Guaranty against vices and defects.* —The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

Defendant contends that he is not legally obligated to reimburse plaintiff the amounts sued for because he failed in the duty he owed defendant to make every reasonable effort to render the injury and loss as light as possible, and unnecessarily allowed the damages to increase, which was avoidable by a performance of his duty.

Defendant argues that it was plaintiff's legal duty to inform him of the defects in the boiler the moment of their discovery, and that, if he had done so, another boiler, owned by him, could have been made available in place of the defective one, and that by not imparting this knowledge to defendant, and by using the boiler for nearly three weeks in its bad condition before advising defendant of that condition, defendant has been released from any liability to plaintiff on account of

his original warranty obligation, under the law and the contract of lease.

We think it was plaintiff's duty to have informed defendant of the boiler's defective condition as soon as that condition was discovered. Unless the lessor is advised of the vices or defects in the thing leased, he has no opportunity to maintain it, as required by article 2692 of the Civil Code. When informed of the needed repairs to the thing leased, if the lessor fails or declines to make them, then, under article 2694 of the Civil Code, the lessee has the right to do so and to deduct the cost from the rent due. If the cost of indispensable repairs exceed the rent, then lessor is responsible for the difference. The lessor should be put in default before the lessee has the right to act. Mullen v. Kerlec, 115 La. 783, 40 So. 46. Lessor is under no liability for repairs made by lessee where he has not been put in default. Dreyfuss v. Process Oil Company, 142 La. 564, 77 So. 283; Hartz v. Stauffer, 163 La. 382, 111 So. 794.

It is clear from the codal provisions and the above-cited decisions that plaintiff is not entitled to hold defendant for the cost of repairs to the boiler. However, the account contains no charge for the welding, but does contain a charge for taking down the old boiler.

■ We do not think defendant should be held responsible for the expense incurred in connection with installing and removing the boiler leased from the Tremont Lumber Company. This boiler was obviously of too small horse power to serve the purpose of a 40 horse power boiler, and plaintiff's agents knew it. Some of them admitted that they were doubtful of the power of the boiler before it was tested. They were taking an unnecessary chance, under the circumstances. It failed, and plaintiff should stand the cost of the experiment.

■■ We think a different situation is presented after December 24th, when defendant was advised of the boiler's condition. Defendant undoubtedly thought he was then obligated, under his warranty to plaintiff, to supply a boiler that would function for the purposes for which the bad one was leased, because his representative, after inspecting the boiler at Tullos, agreed to send another one there, and defendant on the same day (December 28th) wired that the boiler would be delivered next day.

We do not think that because plaintiff failed to promptly notify defendant of the defects in the leased boiler thereby his warranty obligation, as lessor, was for all purposes abrogated. Defendant contends that, had he been given prompt notice of his boiler's bad condition, he was then in a position to supply another one of his own, and that thereby the expenses for which plaintiff sues, in a large measure, would have been averted.

That may be true, but defendant is met with his unqualified promise to supply a new boiler after being advised of the failure of the old one. Plaintiff depended on this promise for a reasonable time, and, before acting, advised defendant more than once of his intentions. The fact that the substitute boiler promised by defendant was seized by the sheriff at Alexandria did not relieve defendant of the promise he made.

■ Plaintiff was under contract with the highway commission to build the bridge at Tullos within a certain time, and it was material to him to complete the work as quickly as possible. It is not intimated that the rental he had to pay on the boiler leased in New Orleans nor cost of its transportation to and from Tullos were not reasonable charges. We think plaintiff entitled to recover for taking down the defective boiler and installing the one brought up from New Orleans, and for the rent he had to pay for this boiler and the cost of transporting it to and from Tullos. He is also entitled to recover the wages paid his foreman and watchman during the fourteen days' delay, caused by the condition of the defendant's defective boiler, which wages are shown in the account sued on.

■■ It required only eleven days to complete the driving of the piling after the New Orleans boiler was installed. It follows, therefore, that, had defendant's boiler been in good condition when delivered, all of the piling could have been driven within a month from December 7th, and plaintiff would have had to pay but one month's rent for all the leased machinery. The first month of the lease term would have ended January 5th, but for the fourteen days' delay due to the failure of defendant's boiler on December 23d. This condition had the effect of extending the first month, for which rent was paid in advance, to January 19th. The follower block was returned on January 18th. The boiler and hoist were attached, at Tullos, on February 15th. It appears in the record that the rental of the follower block per month was fixed at $30, but in the lease this is not mentioned. Evidently the lower court, in awarding defendant judgment for $125, charged plaintiff with one month's rent of the boiler and hoist. It was his duty to return this machinery to defendant at Alexandria, at his own expense. He did not do this, but held it at Tullos for practically one month after he had ceased using any part of it. He should be charged, under the lease agreement, with this time. The lease stipulates that it is on a monthly basis.

To sum up the situation, following our conclusions, it is this:

The first part of the account sued on, amounting to $92.60, less the first two charges of $18 and $8, should be eliminated, and from the second part of the account should be de-

ducted the first four items, amounting to $27.73.

For the reasons herein assigned, the judgment appealed from is reduced in its award to plaintiff to $301.70, and in all other respects said judgment is affirmed; costs of the lower court are assessed against defendant and those on appeal against plaintiff.