REGAN, Judge.
The plaintiff, Tri-State Insurance Company, filed this suit against the defendants, Elmore Labiche Plumbing Company, Inc., Elmore Labiche, and James J. Culotta, endeavoring to recover the sum of $7,164.04, representing an amount which the plaintiff asserts is due as the result of its having to pay certain delinquent accounts on behalf of Elmore Labiche Plumbing Company, Inc., and other expenses incurred in connection therewith. The plaintiff also asserts that Elmore Labiche and James J. Culotta are solidarily indebted to it by virtue of a lost indemnity agreement[1] which they signed guaranteeing the performance by Labiche’s plumbing company to the plaintiff, who had executed a performance bond on its behalf.
In their respective answers, Elmore La-biche Plumbing Company, Inc., admitted liability to the plaintiff as prayed for in its petition. However, Elmore Labiche individually and James J. Culotta denied ever having executed any indemnity agreement for the benefit of the plaintiff.
The lower court rendered judgment in favor of the plaintiff against Elmore Labiche Plumbing Company, Inc., and against James J. Culotta solidarily, but dismissed the plaintiff’s suit against Labiche individually. From that judgment, Culotta has prosecuted this devolutive appeal.
The record discloses that Elmore Labiche Plumbing Company, Inc., was a subcontractor on a building contract which existed between the Jefferson Parish School Board, as principal, and Manson, Smith, McMaster, Inc., as general contractor, involving the erection of two school buildings. The Labiche company was required to furnish the labor and materials for the mechanical, plumbing, heating, and ventilation of these buildings. The plaintiff wrote a performance bond for the Labiche company, which was executed through its agent, Mon-taldo Insurance Agency. However, before the subcontract was completed, the plumbing company found itself in financial difficulties and was consequently unable to obtain the necessary materials from the suppliers thereof for the completion of its subcontract. In order to alleviate this situation, the plaintiff obtained an assignment of the funds to be paid in the future to the plumbing subcontractor by the general contractor, and in consideration thereof, agreed to pay the delinquent accounts owed to the material men and laborers and further guaranteed'the payment of future deliveries of material and to pay for any additional labor which may be required.
A total of $22,129.12 was ultimately paid by the plaintiff for labor and materials in order to enable the plumbing subcontractor to complete its agreement, and a total of $14,969.08 was received by the plaintiff from the general contractor, leaving a loss sustained by it of $7,164.04. The plaintiff has sued for this sum together with attorneys’ and investigators’ fees in the amount of $2,825.22 so that the total amount sought to be recovered is $9,989.86.
When the subcontract was completed and accepted by the general contractor and owner, the plaintiff made demand upon the three defendants for payment of the bal- *257 anee due. The defendants made no effort to liquidate the loss incurred by the plaintiff, hence preparation of this suit was begun. In the course thereof, it was discovered that the indemnity agreement upon which the plaintiff relied had been lost. The loss was advertised in the New Orleans Times-Picayune and in two newspapers in Tulsa, Oklahoma, the home office of the plaintiff. In addition thereto, a diligent search was made of the records of the plaintiff, the plaintiff’s attorney, and the Mon-taldo Agency, all of which failed to reveal the document in question. Consequently, when the plaintiff filed this suit, it was compelled to attach a carbon copy of the alleged indemnity agreement to its petition in order to disclose the nature of the contents thereof.
The defendant contends that since the contract of indemnity must be strictly construed, the failure of the plaintiffs to produce the original of the document is fatal to its case against him. The law applicable to the facts hereof emanates from Article 2279 of the Louisiana Civil Code, which reads:
“When an instrument in writing, containing obligations which the party wishes to enforce, .has been lost or destroyed, by accident or force, evidence may be given of its contents, provided the party show the loss, either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable; and in this case, the judge may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument, in case circumstances render it necessary.”
Pursuant to the rationale of this article, Louisiana courts have reasoned on innumerable occasions that when an instrument is lost or destroyed, its contents may be proved by secondary evidence.[2] The codal pronouncement and the consequent jurisprudential rules emanating therefrom make no exception for any particular type of instrument or contract, and do not except from the terms of the codal article a contract of indemnity or suretyship. In this connection, it is significant to point out that even a written instrument establishing title to property has been permitted to be proved by parol evidence once its loss has been actually established.[3]
Of course, the law imposes upon the plaintiff the burden of proving the existence of the indemnity agreement and the fact that it has actually been lost. Initially, in order to establish the existence of the indemnity agreement, the plaintiffs, as we said, produced a carbon copy thereof. The testimony of Mrs. Frances Pflueger, who was an employee of the Montaldo Insurance Agency at the time of the issuance of the performance bond, was'-offered in connection therewith. She testified that she typed the indemnity agreement on a form regularly used by the plaintiffs. She identified the carbon copy of the agreement and asserted that it was signed by Labiche on behalf of his plumbing corporation, and by James J. Culotta. This copy of the agreement was also identified by O. W. Inhofe, vice-president of Tri-State Insurance Company, who established that the copy offered for the court’s consideration was taken from the files of his company. Labiche also admitted in his pleadings that he had executed an indemnity agreement on behalf of his company and Culotta admitted in his deposition that he had executed such an agreement about the time that the performance bond was written for the Labiche corporation. However, in the course of the trial hereof, he laboriously denied this pertinent fact.
In addition, other evidence in the nature of letters from the plaintiff to the Montaldo Insurance Agency were introduced, the im *258 port of which was to the effect that the plaintiff instructed Montaldo to have the signature of Labiche individually and that of his wife affixed to the indemnity agreement. One letter specifically refers to the signatures of the company and Culotta, but admitted the absence of the signatures of Labiche and Mrs. Labiche individually.
Probably the most important piece of substantiating evidence to establish the actual existence of the indemnity agreement signed by Culotta is a letter dated July 17, 1961, addressed to the plaintiff and also signed by Culotta in which it was stated that “Neither the assignment made by El-more Labiche Company, Inc., or your payment of these accounts due and to become due shall affect our liability under the indemnity agreement which we executed”. Thus, it is quite obvious that Culotta, before actual demand had been made upon him, acknowledged the existence of the indemnity agreement. The evidence adduced herein has convinced us that an indemnity agreement was in fact executed by Elmore Labiche Plumbing Company, Inc., with the signature of Culotta affixed thereto. Moreover, the evidence discloses that the terms of the indemnity agreement were identical to that contained in the carbon copy thereof which was presented, introduced, and identified by the witnesses.
The second element of proof imposed upon the plaintiff was to establish that the indemnity agreement had in fact been lost. John C. Morris, Jr., an attorney for the plaintiff, testified that when this suit became eminent, he requested the company to furnish him with the original agreement. It was then discovered that the original agreement was not in the plaintiff’s files, and Morris was then instructed to endeavor to locate the original agreement at the Mon-taldo agency in New Orleans. Thereafter, Morris contacted' the agency, and was informed by Mrs. Pfleuger that the indemnity agreement could not be located in Montal-do’s files. His testimony was corroborated by Mrs. Pflueger. Thereafter, to reiterate, the loss of the agreement was advertised and a subsequent investigation was made by the attorney presently representing the plaintiff in this matter. He testified that he contacted Montaldo, Howard Campbell and Alton Bordes, whom he had been informed might have possession of the files of the Montaldo Insurance Agency, which at this time had ceased to exist. Moreover, he contacted the firm of attorneys who formerly represented Tri-State Insurance Company, and all of these contacts resulted in a failure to locate the document in question.
The whole tenor of the evidence adduced herein leads us to the inevitable conclusion that the document was actually lost and that it was in fact signed by Elmore Labiche Plumbing Company, Inc., and by James J. Culotta as indemnitor. On the other hand, the evidence offered by the plaintiffs herein convinces us that Labiche did not sign the indemnity agreement in his individual capacity, and the lower court was fully justified in concluding that he was not personally liable thereon. To reiterate, the record clearly discloses that the agreement had been signed by Culotta, and this fact was substantitated by virtue of his letter of July 17, 1961, which we have referred to hereinabove. Therefore, there is no merit in the argument made by counsel for Culotta to the effect that once Labiche was exonerated individually, the same evidence automatically required the exoneration of Culotta.
The foregoing elucidation reveals that the only substantial questions posed for the trial court’s consideration were ones of fact, which were obviously resolved in favor of the plaintiff.
The question which this appeal has posed for our consideration is whether that finding of the trial court was so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a pro *259 tracted discussion of the foregoing testimony or by endeavoring to reconcile the evidence adduced herein. The trial judge accepted the plaintiff’s version of the case, and our analysis of the record convinces us that the evidence contained therein preponderates in its favor, and the judgment is, therefore, correct.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendant is to pay all costs incurred herein.
Affirmed.

. The lost indemnity agreement forms the focal point of this case.

. See Billen v. White, 17 La.Ann. 10 (1865); Cochran v. Cochran, 46 La.Ann. 536, 15 So. 57 (1894); LeJeune v. New Orleans Land Company, 13 Orl.App. 111 (1916); Lyons v. Goodman, La.App., 78 So.2d 424 (1955).

. Barbe v. Watkins, La.App., 134 So.2d 118 (1961).