383 So.2d 1325 (1980)
Ronald F. BREWER, Plaintiff-Appellant,
v.
Eric G. LOEWER et al., Defendants-Appellees.
No. 7507.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearing Denied May 29, 1980.
*1326 Camp, Carmouche, Palmer, Barsh & Hunter, G. Michael Bourgeois, Lake Charles, Jones, Jones & Alexander, J. B. Jones, Jr., Cameron, for plaintiff-appellant.
Devillier & Ardoin, J. Winston Ardoin, Eunice, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX and FORET, JJ.
CULPEPPER, Judge.
Plaintiff, Ronald E. Brewer, is the lessee of 5,800 acres of farm land. After certain negotiations with defendants, Eric G. Loewer, et al, for a sublease, he permitted defendants to go on the land to prepare for planting. When there was no final agreement on the sublease, plaintiff sued defendants for eviction and damages. Defendants reconvened against plaintiff and the landowners, Katherine G. Brewer, et al., for the value of improvements completed during defendants' occupancy of the land. After a trial by jury, judgment was rendered in favor of defendants against plaintiff for the sum of $50,000. Plaintiff appeals.
The issues on appeal are: (1) Did the trial judge err in allowing the testimony of an expert witness who failed to appear for a deposition? (2) Did the trial judge err in instructing the jury that, as a matter of law, neither party could recover for breach of contract? (3) Is the award excessive?
The facts are as follows. In 1966, Ronald Brewer obtained a lease on 5,800 acres of land known as the Circle B Ranch in Cameron Parish. Plaintiff cultivated approximately 1,000 acres, primarily in rice, and placed numerous improvements on the land, including a rice drier and six houses for tenants. Due to other business interests and to bad weather conditions over several seasons, Brewer decided to quit farming.
In October of 1975, Brewer and Frederick Loewer began discussing a sublease of the entire Circle B tract. Loewer wanted to expand his own agricultural operations. He proposed to cultivate approximately 4,000 acres of the Circle B in seed rice and soybeans. Loewer organized the Bauer Planting Company, Inc. to conduct operations on the Circle B. As the major stockholder and business manager, he negotiated for the company, acting subject to the approval of the other two stockholders.
Plaintiff's attorney drafted a three part proposal used during negotiations. The proposal documents included: (1) an Act of Sale of the six frame houses for $60,000, accompanied by a Mortgage in the amount of $43,000; (2) an Agricultural Sublease for a term of one year, subject to renewal for a five-year term; (3) an Act of Sale of all buildings, machinery, appliances, equipment and the rice drier located on the leased property for the sum of $148,000, accompanied by a Chattel Mortgage in the amount of $91,000.
*1327 On the night of November 19, 1975, plaintiff and Loewer reached what they considered to be an agreement as to the terms of the sublease. After shaking hands, they left the proposal documents with plaintiff's attorney for final drafting and execution.
On the following day, plaintiff and Loewer went to the Circle B and informed employees that Loewer would be taking over production and would retain all employees. Within days, Bauer Planting began extensive operations, which continued over the next three months and included plowing some 800 acres, water leveling approximately 900 acres, land grading and irrigation maintenance.
During the week following November 19, Loewer went to the office of plaintiff's attorney but did not sign any of the documents. According to Loewer, the price of the equipment comprising the rice drier was too high. He stated that he could not obtain financing to purchase the equipment because the price exceeded the appraised value. Negotiations continued on this point and Brewer eventually proposed a lease on this equipment. Loewer continued to refuse to sign the documents without a reduction in the equipment cost.
Defendants never did sign any part of the agreement. Plaintiff instituted these proceedings on February 19, 1976.
ADMISSION OF EXPERT TESTIMONY
Defendants' witness, Dr. David Black, was the sole expert to testify on the value of the improvements made by defendants. Plaintiff's objection to the admission of Dr. Black's testimony is based on Dr. Black's failure to appear at a scheduled deposition. Plaintiff contends LSA-C.C.P. Article 1426 requires a court order excusing appearance. This argument has no merit.
The record contains a written objection filed four days after the notice to Dr. Black was mailed on April 19, 1979. Dr. Black testified at trial, which started on April 30, 1979, that he did not receive the notice until approximately 11:00 A.M. on April 25, 1979, the day of the scheduled deposition. Plaintiff had known for months that defendant planned to use Dr. Black as an expert witness. Based on the above, the trial judge found that plaintiff had failed to give reasonable notice of the desired discovery and he allowed the testimony.
As we stated in Arnold v. U. S. Rubber Company, 203 So.2d 764 (3rd Cir. 1967):
"The trial judge, of necessity, must be vested with a great deal of discretion in limiting the right of parties to take discovery depositions. Dawson v. Lindsey, 143 So.2d 150 (La.App. 1st Cir. 1962)."
We find no abuse of discretion here.
IMPROPER JURY INSTRUCTIONS
Plaintiff's second assigned error requires some explanation of procedural events. At the conclusion of trial and out of the presence of the jury, plaintiff made an oral motion for a directed verdict that there was a valid sublease agreement between the parties. Plaintiff also requested the trial judge instruct the jury that since there was a valid sublease, defendants could not recover under the theories of quasi contract or unjust enrichment.
In denying plaintiff's motions, the trial judge stated:
"THE COURT: This is a very unusual case. I am going to announce a decision that I believe will not conform with the request of either side. The Court has heard the evidence in the case and denies the motions for directed verdict made by the Brewer group, and I would agree with counsel for the Loewer group that perhaps the whole question of this contract vel non would be turned over to the jury for some determination so that there's no chance that it would have to be repeated, but I cannot. I've reviewed the pleadings and the evidence, this Court is of the opinion that it is a matter of law that Ronald Brewer cannot recover damages for breach of contract. It's further my decision, the decision of this Court, as a matter of law the only remedies available to the parties who have made claims for damages are those embodied in the articles of the Civil Code dealing with Quasi Contract or those embodied in the jurisprudence arising from Civil Article 21 and described as unjustified enrichment. A full written opinion by this Court to explain the basis for these findings *1328 of law and my holding will be prepared and submitted upon request of counsel...."
Plaintiff's attorney then asked the following question:
"MR. BOURGEOIS: Your Honor, could I ask one question? Am I to understand that, then, the jury is to find that there is no contract?
"THE COURT: That is not strictly the case. The jury is going to be instructed, because it was my finding, that damages for breach of contract are not available. * * * You understand that the Court is not finding as a matter of fact that there was no agreement on November 19th. It is finding as a matter of law that there was no agreement on November 19th. It is finding as a matter of law that upon the filing of this suit that no contract . . . no rights or no obligations are recoverable on the contract at that point.
"MR. BOURGEOIS: I understand."
Apparently, neither party requested written reasons for the court's ruling on the motion for directed verdict because none is contained in the record. The following colloquy occurred, however, at the beginning of trial the following day:
"THE COURT: Do you gentlemen have copies of the oral opinion of yesterday? The Court at this time is ready to hear objections and arguments on objections to the charges. Mr. Bourgeois, I think you initiated the . . .
"MR. BOURGEOIS: Your Honor, I want to say for my client the charges appear to be excellently drawn, and I thank the Court for the time it's taken. One matter which we wish to raise by way of objection, Your Honor, in order to protect the record, is the listing under the Quaisi Contract articles, . . . I understand from the posture of the pleadings and everything that there is no way the jury can find damages for breach of contract, but I do believe, and I do believe the Court will voice some opinion that maybe the jury in this case will have to resolve the question of whether or not there is an agreement, and those articles I would just suggest to the Court perhaps it would not make it easier for the jury to resolve that issue, and I would request that those particular articles be stricken....
"THE COURT: Okay. I can understand that objection. Any other objections?
"MR. BOURGEOIS: No, Your Honor, there are none others."
Subsequently, the following was included in the charge to the jury:
"Ladies and Gentlemen, we now enter that portion of the charge where I will tell you what principles of law apply to this case. As I stated previously, it is your function to determine what the facts are in this case and apply the law that I am about to present to you to those facts. It is of course my function to determine questions of law alone.
"Before we get into the law that applies to this case, I wish to inform you that I have determined as a question of law that neither Brewer nor the Loewer group can recover damages as a result of a breach of contract. But there may be a recovery under other principles of law. Therefore, your job will be to decide if there are sufficient facts to justify recovery under the provisions of law that I will now present to you."
Plaintiff now complains that the trial judge erred in instructing the jury that, as a matter of law, neither party could recover for breach of contract. This instruction, plaintiff contends, decided a question of fact that should have been presented to the jury.
The record shows plaintiff made no objection to the trial judge's instructions as required by LSA-C.C.P. Article 1793 which provides:
"Art. 1793. Instruction to jury; objections
"At the close of the evidence or at an earlier time during the trial as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their argument to the jury.

*1329 "A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
On the basis of the above article, defendants argue that the plaintiff waived his right to appeal on this issue. We agree. In Bourque v. Olin Corporation, 346 So.2d 1373 (3rd Cir. 1977), we stated:
"Failure to timely object to the jury charge waives the right to urge on appeal errors in the charge as grounds for reversal and remand. Druilhet v. Comeaux, 317 So.2d 270 (La.App. 3rd Cir. 1975) (writ denied, La., 321 So.2d 363); Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir. 1962), writ denied. Likewise, the right to attack on appeal an allegedly improper instruction given after the case has been submitted to the jury must be preserved by an objection made at the time the supplemental instruction is given. See Renz v. Texas & Pacific Railway Company, supra. The policy considerations underlying these rules are obvious. As Judge Tate stated in Renz, `Counsel may not permit or acquiesce in an easily corrected procedural error and then, after an adverse verdict, urge such error for the first time as a ground for setting aside the jury verdict reached by the expensive and cumbersome method of a jury trial."
While we agree that the requirements of LSA-C.C.P. Article 1793 are applicable in this case, we give further attention to this matter because the jurisprudence of this State establishes that the right of a litigant to a jury trial is fundamental in character and the courts will indulge every presumption against a waiver, loss or forfeiture thereof. Champagne v. American Southern Insurance Company, 295 So.2d 437 (1974).
We have considered the pleadings and the evidence and find the trial judge was correct in his instruction. Plaintiff and defendants never entered into a contract for the sublease or for the sale of the subject property. The legal effect of the failure to execute the written agreement is a matter of law, properly determined by the trial judge.
As was stated in Stewart v. Schmauss, 191 So.2d 882 (1st Cir. 1966):
"The jurisprudence of this state is to the effect that when parties agree to reduce their contract to writing, the contract is not perfected, and there is no contract until the writing is duly executed. Dreyfuss v. Process Oil and Fuel Company, 142 La. 564, 77 So. 283."
DAMAGES
Dr. Black was the only expert witness to testify in this case. He explained and gave reasons for his appraisal of the value of the improvements and work performed by the defendants. In light of his testimony, we cannot say there was any abuse of the much discretion granted to the trier of fact in fixing damages. Coco v. Winston Industries, Inc., 341 So.2d 332 (1976).
For the reasons assigned, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.