407 So.2d 751 (1981)
Gloria D. PIPER, et vir
v.
Dr. Roy RABALAIS, et al.
No. 14374.
Court of Appeal of Louisiana, First Circuit.
February 9, 1981.
Leo J. Berggreen, Baton Rouge, for plaintiffs-appellants Gloria D. Piper and Henry Piper.
*752 David Donnell, Moss, Baton Rouge, for defendant-appellee Dr. Homer Appleby.
Frank A. Fertitta, Baton Rouge, for defendants-appellees Dr. Roy Rabalais and St. Paul Fire and Marine Insurance Co.
Donald S. Zuber, Baton Rouge, for defendants-appellees Woman's Foundation Hospital, Inc., and St. Paul Fire and Marine Insurance Co.
Before ELLIS, LOTTINGER and PONDER, JJ.
PONDER, Judge.
Plaintiff, Mrs. Gloria Piper, appealed from the denial of a new trial after an adverse jury verdict and judgment on a suit for damages alleging lack of consent for surgery. The bases for the motion for a new trial were that the verdict was contrary to the law and the evidence and that the jury was unconstitutionally selected.
The issues are the admissibility of testimony of the content of a missing document and the constitutionality of the method of jury selection in East Baton Rouge Parish.
We affirm.
Although plaintiff's assignments of error are based upon the denial of a new trial, the Motion for Appeal was from both the jury verdict and the judgment arising therefrom and the denial of the Motion for a New Trial. The appeal is properly before the court. Smith v. Hartford Accident and Indemnity Company, 254 La. 341, 223 So.2d 826 (1969).
Plaintiff's specification of error is evidently based upon the court's admission of evidence as to the existence of a signed form giving consent to the surgery without the form being produced.
We find no objection in the record to the admissibility of the testimony. The portion of the transcript cited by plaintiff[1] seems to be an objection to the witness testifying beyond her personal knowledge.
At any rate we find no error. After it has been established that a document has been lost, secondary evidence to prove the contents of the document becomes admissible. LSA-C.C. Art. 2279; Tri-State Ins. Co. v. Elmore LaBiche Plumbing Co., 212 So.2d 255 (La.App. 4th Cir. 1968). There was evidence that the form had been signed by plaintiff, but was not in the file where it was supposed to be and could not be located. Thus the testimony of the contents of the form was properly admitted.
Plaintiff's testimony that she had not signed the consent to surgery was directly contradicted by other testimony. The jury evidently believed the contrary evidence. We find no manifest error; the verdict was not contrary to the law and the evidence.
Plaintiff contends that on the motion for a new trial she made out a prima facie case of racial discrimination in the method of jury selection and that defendant did not satisfy the shifted onus to justify the disparity.
LSA-R.S. 13:3052 provides:
"All objections to the manner of selecting or drawing the jury or to any defect or irregularity that can be pleaded against any array or venire must be urged before entering on the trial of the case; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard."
However, we will address the question of the allegedly defective jury selection system because of plaintiff's contention that she did not knowingly waive a constitutional right and because of the jurisprudence that the right of a litigant to a jury trial is fundamental in character and the courts *753 will indulge every presumption against a waiver, loss or forfeiture. Brewer v. Loewer, 383 So.2d 1325 (La.App. 3rd Cir. 1980) writ denied 391 So.2d 456.
Because no record of the jury selection in this trial was kept and because there is no indication of race on the jury records, the only proof of the racial makeup was the statement of the attorneys. Evidently, twenty-four jurors were sent to the court room from the jury panel. Evidently twenty of these were subjected to voir dire; five were black. The court excused one black for health reasons and defense counsel peremptorily excused four. Three whites were evidently excused, one by plaintiff's counsel and two by defense counsel. There was no evidence as to the color of the remaining four prospective jurors.
We are unable to find any pattern of discrimination in the above facts. There is no evidence of the racial composition of the jury pool of which the twenty-four were part. There is in fact no proof that the four who were not examined on voir dire were not black, making the ratio eight of twenty-four, higher than the racial makeup of the inhabitants of East Baton Rouge Parish, as shown below.
The sources of names of names for possible jury duties are the list of registered voters in East Baton Rouge Parish and the list of licensed drivers of this parish. Evidence showed that 21.9 percent of the registered voters in East Baton Rouge Parish are black and that 23.9 percent of the drivers are black. A census made in 1973 showed that the black population of this parish constituted 28.2 percent of the total.[2] There were no figures to show how the percentage would be affected by striking the names of those under eighteen.
The federal courts have not yet provided a mathematically exact test for systematic exclusion of blacks. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). However, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) concluded that purposeful discrimination based on race alone is not satisfactorily shown by proving that an identifiable group in a community was underrepresented by as much as 10 percent. In United States ex rel. Barksdale v. Blackburn, 639 F.2d 1115 (5th Cir. 1981), the percentage of eligible blacks in the population was between 26% and 28% and the percentage of blacks in the final petit jury venire was 21.86%; the court held that this was insufficient to prove purposeful discrimination. We find no evidence of purposeful discrimination or significant underrepresentation resulting in a denial of equal protection.
The cases cited by plaintiff are criminal cases. We entertain considerable doubt that the constitutional requirements apply with equal rigor to civil cases. However, even assuming the standard is the same, we find that the plaintiff received a fair trial with no denial of due process of law.
For these reasons, the judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Q. Now, Ms. Fereday, what does that signature on that page indicate you did with respect to Gloria Piper?

Mr. Cobb: Now, I'm going to object at this time, Your Honor. I'll agree that if she says that's her signature that that's her signature and it's on that page, and it's circled in red. But unless she remembers Gloria Piper and remembers what she did, I object to her reading what she says she did.
Mr. Zuber: May it please the Court,
The Court: I overrule the objection. Go ahead."
[2] As was pointed out in United States ex rel. Barksdale v. Blackburn, 639 F.2d 1115, at page 1124, the proper starting point to show discrimination is the presumptively eligible black juror population, rather than the general black population.