417 So.2d 1192 (1982)
Barry L. NETTLES
v.
Earl E. BOWLIN, et al.
No. 14582.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
On Rehearing June 29, 1982.
Rehearing Denied August 24, 1982.
*1193 John Degravelles, Baton Rouge, for plaintiff-appellant Barry L. Nettles.
Laurel B. Clauer, Baton Rouge, for defendant, intervenor and third party defendant-appellee.
Claude F. Reynaud, Jr., Baton Rouge, for defendant and third party defendant-appellee South Central Bell Telephone Co.
Arthur H. Andrews, Baton Rouge, for defendant-appellee Dr. Richard M. Hill.
W. Luther Wilson, Baton Rouge, for defendant-appellee Earl E. Bowlin, Gordon E. Minor and Fred Eubanks.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This suit seeks to recover damages for personal injuries sustained by Barry L. Nettles on August 15, 1977, when a wooden utility pole which he had climbed, as an employee (apprentice lineman) of Gulf States Utilities Company, broke due to a rotten condition at its base, causing him and the pole to fall to the ground. As a result of the fall, Nettles sustained a severe injury for which he had to undergo numerous surgical procedures; and ultimately he had to have his left leg amputated, for which he is now receiving workmen's compensation.
Nettles sued his three Gulf States supervisors (who successfully pursued a motion for summary judgment in the district court which has been previously upheld by this court),[1] Dr. Richard Hill, the owner of the property where the pole was situated (who was subsequently dismissed voluntarily from the suit by appellant), and South Central Bell, one of the appellees herein. Nettles sued South Central Bell, alleging that:
"... South Central Bell Telephone Company was negligent in failing to properly or adequately maintain the pole; failing to test, or otherwise check the pole to see whether or not it was in a safe condition at the time that it removed its telephone wires from the pole prior to the accident;..." (Emphasis ours)
Nettles also relies on the phone company's "garde" of the pole in order to place liability (strict liability) on South Central Bell. South Central Bell answered the appellant's petition denying both negligence and "garde" of the pole; and then in a later pleading, South Central Bell third partied Gulf States Utilities Company, based upon a "joint use agreement" between South Central Bell and Gulf States.
Gulf States intervened, seeking recompense for the sums paid Nettles in workmen's compensation and for medical expenses. Appellant then filed a demand directly against Gulf States, alleging that he was a third party beneficiary to the joint use agreement.
*1194 After trial by jury, verdict was returned in favor of the defendants, with the trial judge signing judgment in accordance therewith. Plaintiff has appealed. We affirm.
First, the appellant contends that the trial court erred in allowing six peremptory challenges each to Gulf States and South Central Bell while granting only six to the plaintiff. It is the appellant's contention that there was a "complete absence of adversity" between Gulf States and South Central Bell, so that they should have been treated as one "side" under LSA-C.C.P. art. 1764, and allowed only six peremptory challenges. There is no merit to this contention. The trial judge determined that Nettles, who sued South Central Bell on grounds of negligence and strict liability; and South Central Bell, which sued Gulf States based on its contract of joint use; and Gulf States, which intervened against South Central Bell; the other defendants; and Gulf States, seeking preferential recompense for the sums that it paid to Nettles under Louisiana Workmen's Compensation Act, were distinct "sides" of the case (a "three-sided" suit), and therefore each had a right to six peremptory challenges. We agree. This decision, which is clearly within his discretion, was made by the trial judge prior to the commencement of the trial.
Article 1764[2] of the Code of Civil Procedure provides the primary guide for use of peremptory challenges in jury trials. Further guidance, insofar as multi-party litigation is concerned, is found in Official Revision Comment (c) under LSA-C.C.P. art. 1764:
"Under this article, if the intervenor takes the side of either party he is regarded as being an extra party on that side. If the intervenor is opposed to both parties, then the suit has three sides, and the above article takes care of that situation also. This is also true as to third parties under the third party practice articles, Arts. 1111-1116, supra." (Emphasis ours.)
This Comment indicates that the drafters of this article contemplated the problems of multi-party litigation. In the present case, South Central Bell third partied Gulf States based on their contractual agreement. The pleadings establish a third party demand with adversity and real substantive issues involved. In addition, as stated above, there is an intervention opposing both parties (plaintiff and defendants) filed by Gulf States.
South Central Bell's interest in the present suit is clearly adverse to that of Gulf States. This is a "three-sided" suit. See Annot., 32 A.L.R.3d 747. We find the trial judge's granting of six peremptory challenges to each side, based on LSA-C. C.P. art. 1764, was proper under the circumstances.
Next, the appellant argues that the jury erred in failing to find South Central Bell negligent, or that it was strictly liable because it had custody or "garde" of the subject pole.
A jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence, and/or its application of the law is clearly erroneous. Perrin v. St. Paul Fire and Marine Insurance Company, 340 So.2d 421 (La. App. 4 Cir. 1976). In the absence of manifest error, the appellate court is not to disturb the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict, based upon its reasonable evaluation of credibility. Ulmer v. Baton Rouge General Hospital, 361 So.2d 1238 (La.App. 1 Cir. 1978). We have carefully examined the record and we see no manifest error in the jury's finding that South Central Bell was not negligent. *1195 There is a reasonable factual basis for the findings of the jury. Esta v. Dover Corporation, 385 So.2d 439 (La.App. 1 Cir. 1980), writ denied, 392 So.2d 690 (La.1980).
The evidence shows that the Gulf States crew in which Nettles was working was removing the Gulf States electrical lines from the subject pole to a new pole which was located a few feet away. Removal of the power lines was necessitated by the construction of a driveway to a parking lot for a new shopping center and grocery store at the corner of Siegen Lane and Perkins Road in Baton Rouge.
The subject pole was a part of a series of Gulf States poles (supporting only that company's aerial cables) which ran parallel to Louisiana State Highway 427 (Siegen Lane). There were four aerial cables of Gulf States on the subject pole which had to be moved to the new pole. All of the cables, except one, had been removed the week before the accident by the same crew, including Nettles. Some of the crew climbed this and other poles, but Nettles was not allowed to climb the pole at that time, because he was an apprentice lineman (such linemen are not qualified to climb poles with energized cables). When Nettles did climb the pole, the remaining cable had been de-energized. An experienced Gulf States lineman, Darryl Dufour, who had climbed the pole the previous week, testified that he found it was "a bit shaky". He reported this to Minor, his line foreman.
On the morning of the accident, Raymond Loupe, another Gulf States lineman, told Earl Bowlin, the foreman of the crew (replacing Gordon Minor), that the pole was "shaky," and that he suggested that Nettles be allowed to use the bucket-truck. Bowlin testified that he did not know of the shaky condition, and that if he had known of the shaky condition of the pole, he would have required a testing of it prior to its being climbed. In any event, the Gulf States foreman did not require the pole to be tested before it was climbed.
It is clear from the evidence that appellant was a Gulf States employee who was injured while working at his job under the supervision of Gulf States. The pole in question was owned by Gulf States. Members of the Gulf States crew had climbed it, and were in a position to determine its safety. Their failure to do so resulted in the injury to Nettles.
The jury was instructed properly as to negligence. We find no error committed by the trial court regarding negligence. Nor does the record reveal any negligence on the part of South Central Bell.
Turning now to the question of strict liability, we find that LSA-C.C. art. 2317, as construed by Loescher v. Parr, 324 So.2d 441 (La.1975), Tate, J. as organ of the Court, and its progeny, have no application to the instant case. While Article 2317, according to Justice Tate, 324 So.2d at 448, embodies the concept of the legal fault of the guardian (custodian) of a thing for the damage caused by the defect of his thing, it is elementary that one must have "garde" of the thing in order to be held strictly liable for its defective condition. Such is not the case before us. South Central Bell had no "garde" of the defective pole. It was solely in the custody and control of Gulf States, which was actually working on the pole, or in the area of the pole, at the time of the accident, and which had actual knowledge, through its crew members, of the "shaky" condition of the pole. All of the circumstances surrounding or connected with the subject pole leading up to the accident to Nettles were under the control and supervision of Gulf States. The jury, based on the evidence presented to it, found from these facts that South Central Bell had no "garde" or custody of the pole. The only connection that South Central Bell ever had with the pole in question was to place a temporary wire on it on February 4, 1977 (some five or six months before Nettles' accident), connecting the phone company's underground terminal to the construction shack or office being used for the parking lot and shopping center construction in the area. The cables and lines of the phone company in the area were all underground. South Central Bell made no use of the subject pole or other poles of Gulf States in *1196 the area for aerial-line purposes. There was no reason for South Central Bell to maintain or take custody of Gulf States' poles. The owner, Gulf States, did not transfer the custody or "garde" of the subject pole to South Central Bell. See Loescher v. Parr, supra at 449, fn. 7; Note, Things in One's CustodyLouisiana Civil Code Article 2317, 43 Tul.L.Rev. 907 (1969). The joint use agreement herein required that Gulf States, as owner, maintain the subject pole in a safe manner. Article VIII of the agreement provides, as follows:
"Maintenance of Poles and attachments.
(a) The Owner, shall at its own expense, maintain its joint poles in a safe and serviceable condition ..."
The agreement does not impose joint responsibility on the parties to the agreement for the maintenance of the joint poles covered by the agreement.
Overall, on the review of the record, the trier of fact did not commit manifest error in determining freedom from negligence on the part of South Central Bell and in finding that South Central Bell was not a custodian (or have "garde") of the defective pole. The jury's verdict and the judgment based thereon will not be set aside. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The appellant further argues that he (Nettles) was the beneficiary of a third party beneficiary contract (stipulation pour autrui) between South Central Bell and Gulf States. There is no merit to this argument. The joint use agreement herein is an agreement of license or permit, dated January 2, 1932, under which certain mutual benefits to both the phone company and the utility company are intended from the use or joint use of the other's utility poles, with the using party or permittee (licensee) indemnifying the owner against damage claims and with each party assuming the liability for damages to its own employees caused by the concurrent negligence of both parties.[3] The agreement has never been *1197 construed by the parties in its almost 50 year history as a third party beneficiary contract, so as to make available to employees of either employer damage awards due to mere joint use of joint poles. The agreement contemplates that each party (employer) to the contract will provide for his own employees. We do not see how any reasonable interpretation of the joint use agreement can lead to the contract meaning that Gulf States agrees to pay damages above and beyond workmen's compensation benefits when such damages occur either as a result of Gulf States' sole negligence, or as a result of the concurrent negligence of Gulf States and South Central Bell, as appellant would have us do. LSA-C.C. art. 1890[4] and the jurisprudence construing the article are inapplicable to the circumstances of the present case.
The fundamental requirement of a stipulation pour autrui is that the third party relationship forms the consideration of the contract; the benefit derived from the contract by the third party may not merely be incidental to the agreement in question. The provision for the benefit of a third party must clearly manifest an intention to confer a benefit upon the third party. The joint use agreement in the case at bar does not clearly manifest any intention to confer a benefit on any third party; it is simply an agreement between two utilities for their mutual benefit. See HMC Management Corporation v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4 Cir. 1979), writs denied, 378 So.2d 1384 (La.1980); 379 So.2d 11 (La.1980).
Finally, appellant contends that the trier of fact erred in failing to find Gulf States negligent in causing the damages to him. The negligence of Gulf States, though apparent, was not at issue, except to show how the accident happened, and that it was caused solely by the negligence of Gulf States and not through any negligence of South Central Bell. Nettles was an employee of Gulf States, working within the course and scope of his employment at the time of the accident which caused the personal injuries to him. This is undeniably the kind of industrial accident contemplated by the workmen's compensation act, LSA-R.S. 23:1031 et seq. Under LSA-R.S. 23:1032, his exclusive remedy is workmen's compensation. Nettles cannot sue Gulf States for tort liability under the circumstances of the instant case. The appellant's argument that Gulf States is liable to him because of its negligence is, therefore, without merit.
For the reasons assigned, the verdict and judgment appealed are affirmed, at the appellant's costs.
AFFIRMED.
COLE, J., dissents and assigns reasons.
COLE, Judge, dissenting
I respectfully dissent. A realistic appraisal of the interests of defendants South Central and Gulf States, as regards the basic issue of liability, leads me to conclude there was an absence of adversity between them. This is confirmed by the joint posture assumed by these defendants during trial. Underlying this lack of adversity is their contractual agreement which provides (Article XIII, Sub-part 5):
"All claims for damages arising hereunder that are asserted against or affect both parties hereto shall be dealt with by the parties hereto jointly. ..." (Emphasis added.)
*1198 Thus, the interests of South Central and Gulf States were, of contractual necessity, allied. This is true even though Gulf States was both an intervenor and a third party defendant, in addition to being a direct defendant.
It was apparent to Gulf States that its liability in this case, if any, would have to be based upon the joint use agreement and assessed against it as South Central's third party defendant. It, therefore, behooved Gulf States to help prevent plaintiff from prevailing against South Central. This was Gulf States' real interest. Otherwise, it was protected by tort immunity. LSA-R.S. 23:1032.
Accordingly, the trial court erred in the allocation of peremptory challenges. Under LSA-C.C.P. art. 1764, each "side" to litigation must be allowed an equal number of peremptory challenges. The plaintiff constituted one side of this litigation, with South Central and Gulf States combined constituting the other side. Yet, plaintiff was allowed six peremptory challenges while the two defendants were allowed a total of twelve peremptory challenges. By denying plaintiff an equal number of peremptory challenges, his right to a fair and impartial jury trial was impaired. LSA-C. C.P. 1764 permitted the trial court in this instance to allow each "side" not less than six nor more than ten peremptory challenges. It was essential, however, that each side be allowed the same number.
For these reasons, I would remand. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), does not require that we review the record and decide this case on the merits. Gonzales does not deal with a situation where the jury is unfairly selected and, therefore, improperly constituted. The basic right to a fair jury trial requires remand.

ON REHEARING
COLE, Judge.
A rehearing was granted in this case to reconsider the majority's determination that the trial court did not err in allowing six peremptory challenges each to Gulf States and South Central Bell while granting only six peremptory challenges to the plaintiff. The action of the trial court was correct only if it may be said the plaintiff constituted one "side" of the litigation, while Gulf States and South Central each constituted an additional "side." LSA-C. C.P. art. 1764.
In addition to the reasons set forth in the dissent to the original opinion, we note the basic allegations of South Central's third party demand against Gulf States were admitted by Gulf States. In their answer to the third party demand, Gulf States did not even seek its dismissal. There was clearly no adversity between South Central and Gulf States. This was immediately noticed by counsel for the plaintiff who moved for a mistrial based upon the disproportionate allotment of peremptory challenges. The motion was denied. We think this deprived plaintiff of his basic right to a fairly selected jury and requires a remand.
For these reasons, and the additional reasons expressed in the dissent to the original opinion, we reverse the judgment of the trial court and order this matter remanded for a new trial with the jury selection to be in accordance with the principles herein expressed.
Appellees are assessed with the cost of this appeal, all other costs to await a determination of the merits.
REVERSED AND REMANDED.
NOTES
[1] Nettles v. Bowlin, 386 So.2d 658 (La.App. 1 Cir. 1980).
[2] LSA-C.C.P. art. 1764 provides:

"Each side is allowed six peremptory challenges. If there is more than one party on any side, the court may allow each side additional peremptory challenges, not to exceed four. Each side shall be allowed an equal number of peremptory challenges. If the parties on a side are unable to agree upon the allocation of peremptory challenges among themselves, the allocation shall be determined by the court before the examination on the voir dire."
[3] Article XIII of the joint use agreement provides:

"LIABILITY FOR DAMAGES
"Whenever any liability is incurred by either or both of the parties hereto for damages for injuries to the employes or for injury to the property of either party, or for injuries to other persons or property, arising out of the joint use of poles under this agreement, or due to the proximity of the wires and fixtures of the parties hereto attached to the jointly used poles covered by this agreement, the liability for such damages, as between the parties hereto, shall be as follows:
"1. Each party shall be liable for all damages for such injuries to persons or property caused by its sole negligence or by its failure to comply at any time with the specifications herein provided for; provided that construction temporarily exempted from the application of said specifications under the provisions of Section (b) of Article VIII shall not be deemed to be in violation of said specifications during the period of such exemption.
"2. Each party shall be liable for all damages for such injuries to its own employes or its own property that are caused by the concurrent negligence of both parties hereto or that are due to causes which cannot be traced to the negligence of the other party.
"3. Each party shall be liable for one-half (½) of all damages for such injuries to persons other than employes of either party, and for one-half (½) of all damages for such injuries to property not belonging to either party that are caused by the concurrent negligence of both parties hereto or that are due to causes which cannot be traced to negligence of either party.
"4. Where, on account of injuries of the character described in the preceding paragraphs of this Article, either party hereto shall make any payments to injured employes or to their respective relatives or representatives in conformity with (1) the provisions of any workmens' compensation act or any act creating a liability in the employer to pay compensation for personal injury to an employe by accident arising out of and in the course of the employment, whether based on negligence on the part of the employer or not, or (2) any plan for employes' disability benefits or death benefits now established or hereinafter adopted by the parties hereto or either of them, such payments shall be construed to be damages within the terms of the preceding paragraphs numbered 1 and 2 and shall be paid by the parties hereto accordingly.
"5. All claims for damages arising hereunder that are asserted against or affect both parties hereto shall be dealt with by the parties hereto jointly; provided, however, that in any case where the claimant desires to settle any such claim upon terms acceptable to one of the parties hereto but not to the other, the other party to which said terms are acceptable may, at its election, pay to the other party one-half (½) of the expense which such settlement would involve, and thereupon said other party shall be bound to protect the party making such payment from all further liability and expense on account of such claim.
"6. In the adjustment between the parties hereto of any claim for damages arising hereunder, the liability assumed hereunder by the parties shall include, in addition to the amount paid to the claimant, all expenses incurred by the parties in connection therewith, which shall comprise costs, disbursements and other proper charges and expenditures not including, however, attorney's fees. Each of the parties hereto shall pay its own attorneys."
[4] LSA-C.C. art. 1890 states:

"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."