446 So.2d 1269 (1984)
Gladys A. SMITH, Natural Tutrix of Gilbert M. Smith, III
v.
STATE FARM INSURANCE COMPANY, Andrew Boisseau, Jerome A. Bondy, and XYZ Insurance Company.
No. CA-1065.
Court of Appeal of Louisiana, Fourth Circuit.
February 17, 1984.
Rehearings Denied March 21, 1984.
Writs Denied May 4, 1984.
*1271 Joseph W. Thomas, New Orleans, for plaintiff-appellant.
John A. Stewart, Jr., Hulse, Nelson & Wanek, J. Thomas Nelson, Birdsall, Rodriguez, Robelot & Nelson, Joseph R. Ward, Jr., Joseph L. von Rosenberg, III, New Orleans, for defendants-appellees.
Before REDMANN, BARRY and WILLIAMS, JJ.
BARRY, Judge.
In this personal injury case a jury found in favor of all defendants. Plaintiff assigns as error the allocation of six peremptory challenges to her and eighteen challenges to the defendants, and the court's charge on "unavoidable accidents."
Plaintiff's claim stems from an accident in which her 12-year old son, Gilbert, was hit in the eye with a fishhook being cast by 9-year old Blaine Bondy. The youngsters were fishing with defendant Andrew Boisseau. Plaintiff initially sued Boisseau and his insurer, State Farm Fire & Casualty Co., as well as Blaine and his father, Jerome Bondy, also insured by State Farm. Plaintiff alleged negligence on the part of Boisseau and Blaine and asserted solidary liability. By amended petition plaintiff named as defendants Blaine's mother, Ruby Bondy, and her homeowner's insurer, Prudential Property and Casualty Ins. Co.[1]
Ruby Bondy and Prudential filed a third party demand against Boisseau and State Farm claiming indemnity for any liability assessed against Ruby Bondy and/or Prudential. Subsequently, Ruby Bondy moved for summary judgment (because she was neither legal custodian nor tutrix of Blaine) and by consent was dismissed, but her insurer, Prudential, remained a defendant as Blaine's insurer.
Plaintiff and Prudential filed jury demands and, at an unrecorded conference in chambers before trial, the number of peremptory challenges was set. The attorneys disagreed whether the judge stated he was allotting 6 challenges to each party or six challenges to each side. Plaintiff's attorney believed he had six challenges and the defendants had six as a group constituting the other "side". During jury selection it became apparent the court was allowing the defendants more than six peremptory challenges. Plaintiff immediately objected, a bench conference was held, and the court ruled that "there were four sides to this lawsuit, and ... each side was entitled to the same number of challenges." Plaintiff was denied a mistrial and jury selection continued with defendants exercising 18 peremptory challenges.
Plaintiff applied for a writ which was denied because "relator has an adequate remedy on appeal." Judge Williams dissented. See Smith v. State Farm Insurance Co., 4th Cir. No. C-0354 (Nov. 30, 1982). The trial proceeded and by a vote of nine (9) for and three (3) against, the jury returned a verdict in favor of all defendants *1272 because the injury was "an unavoidable accident."
Plaintiff was granted a new trial because Mrs. Bondy "violated" the witness sequestration order, but by writ application another panel of this Court erroneously vacated the new trial order because "the sequestration order does not apply to an insured of an insurer-defendant, which has a right to consult with its insured during the course of the trial." Smith v. State Farm Insurance Company, 4th Cir. No. C-0572 (Feb. 9, 1983). Certiorari was denied. Smith v. State Farm Insurance Company, 429 So.2d 173 (1983). However, Mrs. Bondy had been dismissed as a defendant and the insured is her son, Blaine Bondy. Therefore, the trial judge properly ruled that the sequestration should include Mrs. Bondy.
At the time of trial, the number of peremptory challenges was set by LSA-C.C.P. Art. 1764,[2] which provided:
Each side is allowed six peremptory challenges. If there is more than one party on any side, the court may allow each side additional peremptory challenges, not to exceed four. Each side shall be allowed an equal number of peremptory challenges. If the parties on a side are unable to agree upon the allocation of peremptory challenges among themselves, the allocation shall be determined by the court before the examination on the voir dire.
The Official Revision Comments to Art. 1764 note that:
It covers all possible variations, including multiple parties. The interests of the parties technically on the same side may be common or adverse to each other. It has been held that joint tortfeasors must share a single set of peremptory challenges. Driefus v. Levy, 140 So. 259 (La.App.1932). However, where the interests of the joint tortfeasors are opposed, the above article permits a more just resolution of the question, [i.e., four more challenges.]
* * * * * *
Under this article, if the intervener takes the side of either party he is regarded as being an extra party on that side. If the intervener is opposed to both parties, then the suit has three sides, and the above article takes care of that situation also. This is also true as to third parties under the third party practice articles, Arts. 1111-1116, supra. (Emphasis ours)
It is clear that the number of "sides" in a lawsuit is determined by the legal posture of the parties and multiple parties defendant, even defendants with adverse interests, constitute a single side. Such co-defendants would be entitled to six or ten challenges at the judge's discretion, and the plaintiff or plaintiffs would receive an equal number. If there are incidental demands such as third party claims among co-defendants which place the defendants in truly adverse postures, the lawsuit may have more than two sides. In that case each side would receive the same number of challenges depending on the number of parties on a side and the court's decision.
This lawsuit has one plaintiff adverse to all defendants. There are four defendants: Boisseau and Jerome Bondy (Blaine's father) who were allegedly solidary obligors and both represented by the same attorney who filed a joint brief in this Court; State Farm, (represented by another attorney) in its capacity as insurer of Boisseau and Bondy; and Prudential, represented by its attorney, which had filed a third party claim for indemnity against two co-defendants. Prudential did not put on a case but adopted the evidence of its co-defendants and its interest, like its co-defendants, was in proving Gilbert's injury was not due to Boisseau and Bondy's negligence.
We note that Boisseau and Bondy never assumed adverse postures. Neither filed a third party claim; rather, both asserted Gilbert's injury was due to his own *1273 negligence, assumption of the risk, or unavoidable accident. Obviously the two individual defendants are on the same "side" as their insurer, State Farm, and share the same interest in defeating plaintiff's claim. Thus, Prudential is the only defendant which may arguably be on a different side from the other defendants.
Defendants cite Power v. Otis Elevator Co., 409 So.2d 389 (La.App. 4th Cir. 1982) for the proposition that third-party demands may create additional sides to a lawsuit. We recognize that where, as in Power, two co-defendants maintain adversary positions and are on opposite sides of a viable third party demand, each party may constitute a separate side under Art. 1764. We reaffirmed that position in O'Brien v. Delta Gas, Inc., 426 So.2d 262 (La.App. 4th Cir.) writ denied 433 So.2d 163 (La.1983).
Even assuming Prudential was truly adverse to the other defendants against whom it filed a third party demand, there could be no more than three sides to this suit: plaintiff, the other defendants, and Prudential. Despite the superficially adversary posture of Prudential, a realistic analysis of their respective interests shows the parties are not truly adverse.
A somewhat similar situation was presented in Nettles v. Bowlin, on rehearing 417 So.2d 1192 (La.App. 1st Cir.) cert. denied 422 So.2d 416 (La.1982). The plaintiff in Nettles, an employee of Gulf States Utilities Company, sued South Central Bell for injuries suffered when he fell from a defective telephone pole. The phone company third-partied Gulf States which intervened seeking reimbursement for its workmen's compensation payments. Because of the incidental claims, the trial court felt there were three sides to the case and allowed Gulf States and the phone company six challenges each. The First Circuit reversed and remanded, holding that because of a joint use agreement both parties had a stake in preventing the plaintiff from prevailing against the telephone company. The Court reasoned that since any liability of Gulf States (third party defendant) would have to be based upon the initial finding of liability against the phone company (third party plaintiff) the parties were not truly adverse and were thus, together, entitled to only six challenges.
This case presents even less adversity between Prudential and the third-party defendants than between the parties in Nettles, supra. However, if Prudential is one side and the other defendants one side, the lower court erred in allowing defendants a total of eighteen challenges while restricting plaintiff to six. Plaintiff properly and timely objected to the jury allocation.
We further find this error effectively deprived plaintiff of her right to a fair trial by jury. The court in Nettles came to the same conclusion, holding "By denying plaintiff an equal number of peremptory challenges, his right to a fair and impartial jury was impaired." 417 So.2d at 1198.
Plaintiff has requested that we remand for a new trial. In the identical situation Nettles, supra, ordered a remand. The court adopted Judge Cole's original dissent, which stated:
For these reasons, I would remand. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), does not require that we review the record and decide this case on the merits. Gonzales does not deal with a situation where the jury is unfairly selected and, therefore, improperly constituted. The basic right to a fair jury trial requires remand.
We feel this case presents even more compelling reasons to remand rather than for us to make an initial factual determination. The rather large disparity between the number of challenges allowed plaintiff and defendants certainly deprived plaintiff of a fair jury. In denying plaintiff's writ by a 2-1 vote, another panel of this Court stated "Relator has an adequate remedy on appeal." The only adequate remedy at this stage of the proceedings is an opportunity to choose a properly constituted jury.
*1274 Gibbons v. NOPSI, 442 So.2d 833 (La. App. 4th Cir.1983), was remanded for a jury trial because the jury had been improperly dismissed before trial ended. "Preservation of defendant's right to a jury trial can be accomplished, at this stage, only by remanding the case to the trial court for the purposes of conducting a jury trial." Gibbons.
The fundamental right to a jury trial is acknowledged in LSA-C.C.P. Arts. 1731-1735 and was recognized in Piper v. Rabalais, 407 So.2d 751, 752-753 (La.App. 1st Cir.1981), which stated:
[W]e will address the question of the allegedly defective jury selection system because of plaintiff's contention that she did not knowingly waive a constitutional right and because of the jurisprudence that the right of a litigant to a jury trial is fundamental in character and the courts will indulge every presumption against a waiver, loss or forfeiture. Brewer v. Loewer, 383 So.2d 1325 (La. App. 3rd Cir.1980) writ denied 391 So.2d 456.
Additionally, we note that Gonzales, supra, was modified in Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980), which held:

Gonzales should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
In view of the conflicting testimony as to defendant Boisseau's supervision and the two boys' actions and positions in the boat, as well as the tender age of plaintiff's son and main witness, we find a firsthand view of the witnesses is essential to a just resolution of the facts. This conclusion is buttressed because the original jury split 9-3, even though it was heavily defense-selected due to the disproportionate challenges.
Finally, plaintiff timely and validly objected to the "unavoidable accident" jury charge. Whether the defendants exercised proper or ordinary care, or even the highest degree of care, is a jury fact determination. See Seals v. Morris, 410 So.2d 715 (La.1981). The foreseeability of the accident under these facts and the question of liability was adequately covered in the other jury charges. Any reference to an "unavoidable accident" by a charge or on the jury's verdict form was clearly wrong.
The district court judgment is vacated and this matter remanded for a jury trial at which plaintiff as one side and all other defendants as another side will each have the same number (from six to ten as decided beforehand by the trial judge) of peremptory challenges; at which no instruction or interrogatory on "unavoidable accident" will be given to the jury; and at which Mrs. Bondy will be subject to the sequestration of witnesses if demanded.
REVERSED; REMANDED.
NOTES
[1] Blaine Bondy's parents, Jerome and Ruby Bondy, were living separately at the time of the accident. Although a divorce was pending, there had been no judgment of separation or custody. Blaine was living primarily with his mother at her house. At the time of trial, Jerome and Ruby Bondy were divorced and Ruby had married defendant Boisseau.
[2] C.C.P. Art. 1764 was amended by Act 534 of 1983.