534 So.2d 1282 (1988)
Lynn B. DEAN
v.
Hillary J. NUNEZ.
No. CA 8833.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
On Rehearing November 29, 1988.
Writ Granted January 6, 1989.
*1284 Roy A. Raspanti, New Orleans, for plaintiff/appellant.
Daniel L. Dysart, Paul A. Tabary, III, Dysart, Sanborn & Tabary, Chalmette, Page McClendon Michell, C. Gordon Johnson, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants.
Before BARRY, CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
Appellant, Lynn B. Dean sued eight members of the St. Bernard Parish School Board[1] (School Board) and District Attorney John F. Rowley for malicious prosecution. The trial court granted the district attorney a directed verdict and the jury rendered a verdict for the remaining defendants. Appellant assigns three categories of error: errors of procedural and evidentiary questions, errors of the jury in failing to render a verdict for appellant, and errors of the trial court in rendering a directed verdict for the district attorney *1285 based on prosecutorial immunity and absense of malice.
This cause of action arises out of a dispute between two political factions. On January 1, 1981, Dean was elected to the St. Bernard Parish School Board. He immediately became embroiled in controversy with other members of the board. On April 4, 1981, the Parish of St. Bernard was conducting an election for the Fourth Circuit Court of Appeal and other issues. On March 31, 1981, Dean wrote and distributed approximately three thousand copies of a letter he authored. This letter, prepared on blank paper, contained the names of the school board defendants in the left hand margin. Dean cut their names from the official school board stationary and pasted them to his letter. He did not use the school board stationary logo, did not list the school board officers or use the same color ink.
The letter read as follows:
Dear Friends,
Though you have not heard much about me lately, I am working hard to improve our schools. We should soon hire a new superintendent that I hope will give us new direction. This is probably the most important decision we will make for our children in a long time!
Even though I was disappointed in not being able to reduce the school insurance costs last month, I feel the board will soon adopt policies that will do this and reduce other costs as well. I shall, at least, keep trying. You can help me by writing to the other board members, whose addresses are on this letterhead, and by writing letters to your newspaper editors on how you feel. Pressure from you, the public, helps board members make good decisions.
It is a shame the number of children who are harmed by the explosive force and heat of fireworks and the amount of damage done to homes, cars, boats, grass and woodlands. Fireworks are sold just to make a profitin total disregard for the safety of our children or respect for property rights of others. We don't let little children drive cars because they are dangerous. We prohibit the discharge of firearms within a mile of our homes for safety reasons. Isn't it reasonable to protect our children from themselves by voting YES on Saturday, April 4th, to ban the sale and use of fireworks. Please do! Close by, a neighbor boy lost an eye that was worth more than all the fireworks in the world. You can prevent this type of harm by voting YES to ban fireworks!
Since Robert J. Klees was elected to our St. Bernard Police Jury, along with Henderson, Rodriquez, Munster, Garboty, Ponstein, Cusimano and others; we have, for the first time in most of our lives, seen the Police Jury become more responsible to the people instead of being controlled by others. These men have reduced the cost of insurance for the Police Jury by looking for better rates instead of buying from a local politician. This, with many other examples, proves to me that Bobby Klees, is a good, independent Police Juror and I feel we should elect him Judge of the Court of Appeals! Judges not only decide law suits but interpret the laws our legislators pass. We need someone as judge who is dedicated, sincere and not controlled by others.
I and my family are going to vote for Bobby Klees and I hope you will too.
Please plan to vote Saturday, April 4th.
 Sincerely,
 Lynn B. Dean
 School Board Member
 Ward 5
The school board members immediately learned of the letter. Defendant Nunez, seeking legal advice, first consulted Mr. Elmo Tapper, who was running for the Fourth Circuit Court of Appeals against Mr. Dean's candidate, Robert Klees. Mr. Tapper advised Mr. Nunez that the letter violated the Election Code. Both Mr. Nunez *1286 and Mr. Tapper visited John Lane, the board's president and it was agreed that the district attorney, the board's legal advisor, would be consulted the following day. The next day Defendant Nunez conferred with District Attorney John Rowley, who advised him that the letter violated LSA R.S. 18:1463(B) of the election code and that charges should be instituted against Dean through the Justice of the Peace. The school board met that afternoon, reviewed the advice they received from Rowley, and agreed to file the charges against Dean.
On April 3, 1981, the day before the election, the eight school board members executed affidavits before Justice of the Peace Glen Nunez, who came to the school board office. They charged Dean with eight counts of willfully, maliciously and feloniously violating LSA R.S. 18:1463(B).
LSA R.S. 18:1463(B) provides:
B. No person shall cause to be printed or assist in the distribution of ... any official ... writing ... which falsely alleges that any candidate ... participating in a ... general election ... [is] supported by ... another ... person, or a political faction.
The afternoon of April 3, 1981, Mr. Lane called Times-Picayune reporter Steve Cannizaro and notified him that Dean was to be arrested. At approximately 9 p.m., the sheriff called Dean at his home and asked that he report to the sheriff's office because a warrant for his arrest was outstanding. That evening, Dean surrendered to the St. Bernard Sheriff's Office, where he was finger printed, photographed and detained for about one and one-half hours. The story of Dean's arrest was reported in the local newspapers the next day and thereafter.
On July 20, 1981, District Attorney Rowley filed a Bill of Information charging Dean with eight counts of violation of R.S. 18:1463(B). Dean pled not guilty.
On November 3, 1981, the court conducted a preliminary examination. After a full evidentiary hearing the court concluded:
... I hold that there is no probable cause for the charges filed. The School Board members are public figures and as such have less privacy than a private individual and by being elected they are subject to calls from the public, letters from the public.... While I have found no probable cause for the charge I am not in control of the charge. The District Attorney controls his own docket.
Thereafter District Attorney Rowley continued the prosecution. The court scheduled the case, at the request of the assistant district attorney, for jury trial on Nov. 3, 1981. All parties were present and the district attorney requested and received a continuance to December 10, 1981. All parties appeared, but the district attorney nolle prossed the charges. Dean objected and requested that a witness be sworn in before the dismissal in order to avoid the two year period in which the charges could be reinstituted. The Court denied his request.
In April 1982 Dean first brought charges against Defendant Nunez. After taking depositions of each board member, he added them as defendants. Finally after the two year period to recharge him criminally had passed, Dean added District Attorney Rowley as a defendant.
I. PROCEDURAL ERRORS
Mr. Dean argues that numerous procedural errors, individually and collectively, deprived him of a fair jury trial. We shall consider each separately for the purpose of clarity.
A. JURY SELECTION
Appellant contends the trial court erred when it ruled that there were three sides to the law suit and allowed each side ten peremptory challenges. The appellant as plaintiff had ten, but the school board members and the district attorney had ten each, giving the defendants a total of twenty. The plaintiff contends that the school board members and the district attorney are a single side because they are joint tortfeasors with no third party demands among them.
*1287 C.C.P. article 1764 governs peremptory challenges; it provides in pertinent part:
B. If trial is by a jury of twelve, each side is allowed six peremptory challenges. If there is more than one party on any side, the court may allow each side additional peremptory challenges, not to exceed four.
In Smith v. State Farm Ins. Co., 446 So.2d 1269 (4th Cir.1984), the Fourth Circuit examined the issue of distribution of peremptory challenges in a situation where plaintiff was allocated six and defendants were allocated eighteen. In Smith, the mother of a child hit in the eye with a fishhook being cast by another child, filed a personal injury action naming the child, his father and their insurance companies as defendants. The judge found there were four sides to the law suit, and alloted equal challenges to all four. The Fourth Circuit reversed, reasoning:
It is clear that the number of "sides" in a lawsuit is determined by the legal posture of the parties and multiple parties defendant, even defendants with adverse interests, constitute a single side. Such co-defendants would be entitled to six or ten challenges at the judge's discretion, and the plaintiff or plaintiffs would receive an equal number. If there are incidental demands such as third party claims among co-defendants which place the defendants in truly adverse postures, the lawsuit may have more than two sides. In that case each side would receive the same number of challenges depending on the number of parties on a side and the court's decision.
The court notes that Power v. Otis Elevator Co, 409 So.2d 389 (4th Cir.1982) and O'Brien v. Delta Gas, Inc., 426 So.2d 262 (4th Cir.1983) writ denied 433 So.2d 163 (La.1983) both stand for the proposition that third party demands are proof of additional sides to a lawsuit. However, not all third party demands are proof of adversity. In Nettles v. Bowlin, 417 So.2d 1192 (1st Cir.), cert denied 422 So.2d 416 (La.1982), the trial court's ruling that the presence of a third party demand resulted in three sides was reversed by the First Circuit, which held that "because of a joint use agreement both [defendants] ... had a stake in preventing the plaintiff from prevailing." Therefore, the defendants in Nettles were not entitled to addition peremptory challenges.
Although, the jurisprudence holds that there should be equal peremptory challenges per adversarial side, the dissatisfied party must properly and timely object to jury allocation. Defendants/appellees in the case at bar argue counsel for the plaintiff/appellant objected and rescinded his objection during the selection of the jury. However, the record reveals that Mr. Raspanti made a proper and timely objection to the granting of the peremptory challenges to the defendants.
LSA-C.C.P. 1764 provides that each side in a law suit shall have an equal number of peremptory challenges. The Official Revision Comments to Art. 1764 notes in pertinent part:
The interests of the parties technically on the same side may be common or adverse to each other. It has been held that joint tortfeasors must share a single set of peremptory challenges. Driefus v. Levy, 140 So. 259 (La.App.1932)
In this case there were no third party claims among defendants and all asserted identical defenses. Therefore, the trial court erred in allowing defendants twenty challenges while restricting plaintiff to ten. This error deprived the plaintiff of his right to have a jury composed of individuals that he perceived to be favorable to his cause of action.
B. CONDUCT DURING VOIR DIRE
Dean claims that counsel for the defendant erroneously instructed prospective jurors as to the law in the case during voir dire. Specifically he objects to opposing counsel stating repeatedly to the jury over his objection the following questions:
Question 1:
We as defendants have certain defenses that we'll provide, one defense that the defendants have in this case is that the affidavits that were made against Mr. Dean charging him with violation of the *1288 Election Code were done honestly, and in good faith...
Question 2:
Will you consider the defenses, whatever defenses my clients have to offer, whether those defenses ... be that they acted honestly in good faith and whether they acted upon advice of counsel. If they can show and provide you with those defenses, would you have any hesitation whatsoever in granting a verdict in favor of the defendants and against the plaintiff? Any hesitation at all?
Prospective jurors may be questioned by the parties but the court may control the scope of the examination to prevent unfavorable prejudicial questioning. La.C.C.P. art. 1763. Generally the scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of the clear abuse of discretion. State v. Straughter, 406 So.2d 221 (La.1981).
The purpose of voir dire examination is to determine the qualifications of the prospective jurors. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Ford, 349 So.2d 300 (La.1977); State v. Graham, 486 So.2d 1139 (La.App.2d Cir. 1986).
However, trial lawyers utilize voir dire examinations for other valid purposes which promote trial advocacy. Interrogation frequently relates to pre-conditioning and education on issues in the case, neutralizing prejudices which are not grounds for a cause challenge, laying a foundation to develop tactics or strategy, exhibiting credibility, introducing a theme or theory for the case, setting the stage for opening statements or closing arguments, anticipating objections, disclosing weaknesses in the case and becoming acquainted with the jury.
The judge, of course, governs the instructions of law given to the jury. He has discretion to limit counsel's explanation of the applicable law, including questions directed to the prospective juror regarding his or her ability to follow the law. State v. Carter, 459 So.2d 1324 (La.App. 1st Cir. 1984), writ denied 472 So.2d 592 (1985). A question addressed to the juror as to whether he would follow the law of certain specific instructions expected to be given by the court does not constitute error. Mobley v. G.M. Corp., 482 So.2d 1056, 1060 (La.App. 3rd Cir.1986). Questions that probe the jurors' ability to accept the law as given to them by the court are appropriate if there is no misstatement of the law. State v. Williams, 346 So.2d 181 (La.1977); State v. James, 339 So.2d 741 (La.1976).
An action for malicious prosecution arising out of a criminal proceeding requires, among other things, the absence of probable cause for the criminal proceedings. The plaintiff must prove as part of his burden that the criminal proceeding was initiated or continued without probable cause. Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La.1987).
Defense counsel's questions to the jury relating to good faith, honesty and advice of counsel were inaccurate incomplete statements of law. Good faith and advice of counsel may be factors justifying probable cause. However, other improper causes may exist, such as revenge, politics or rancor. It was improper to secure a commitment or promise from the jury panel, to render a defense verdict based only on honesty and a good faith belief in their conduct.
Thereafter plaintiff counsel asked the same sort of questions to overcome the effect of this line of examination. He too failed to state the law accurately and completely. These questions were also improper because they reinforced an incomplete and inaccurate statement of law.
The proper procedure for the attorney during voir dire is to advise the judge at pretrial conference or during the trial, at side bar, that questions of law applicable to a cause will be asked. The trial court may explain the law to the jury panel, issue guidelines for the attorney to follow or correct misstatements in the law or pleading during the questioning. Prejudicial statements can be corrected by admonishing *1289 the panel. In this case the trial judge failed to correctly instruct the jury as to the law during voir dire.
C. FAILURE TO EXCUSE JUROR BADEAUX FOR CAUSE
Juror Badeaux was an employee of the school board. She did not know Dean but knew Defendant Rowley and other school board members. She also worked as a volunteer in the political campaigns of Defendants Rowley and Nunez. She served as a telephone volunteer and placed yard signs on her property and bumper stickers on her car. Dean and Nunez were members of different political factions. On voir dire she proclaimed that she could be fair and impartial. At that point Dean's peremptory challenges were exhausted and he challenged her for cause and was denied.
Cause challenges are regulated by La.C. C.P. art. 1765:
A juror may be challenged for cause based upon any of the following:
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial.
The general rule is that the decision to excuse a juror is within the sound discretion of the trial judge; to constitute grounds for reversal, the trial judge's abuse of discretion must be shown. State v. Evans, 192 So.2d 103 (La.1966), cert. denied 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed. 2d 187, rehearing denied 389 U.S. 998, 88 S.Ct. 483, 19 L.Ed.2d 507; State v. Sylvester, 400 So.2d 640 (La. 1981); Seals v. Pittman, 499 So.2d 114 (La.App. 1st Cir.1986).
The original charges against Dean developed out of a political dispute between him and the members of the school board for whom Mrs. Badeaux worked. As a regular political volunteer for defendants Nunez and Rowley, she indicated her loyalty and allegiance to them; her attitude should have disqualified her as a juror for cause.
Because Dean exhausted his peremptory challenges, it was harmful error to deny his cause challenge, thus forcing him to accept a juror prejudiced against him. Seals v. Pittman, supra; Bernard v. Richoux, 464 So.2d 856 (La.App. 5th Cir. 1985).
D. EVIDENCE OF THE "ROWLEY POLITICAL ORGANIZATION"
Dean attempted to lay a foundation to question the defendants as to whether an entity or organization known as the "Rowley Organization" existed, whether the defendants were members and whether there was a political relationship or motive among the defendants. The trial court denied Dean the right to lay a predicate on this issue, holding that it was irrelevant.
Evidence is generally admissible if it is authentic and relevant. As applied to testimony, "relevant" means testimony which directly touches upon the issues which the parties have created. LSA R.S. 15:441 Generally any legally competent evidence which when taken alone or in connection with other evidence, tends to prove or disprove a material or controlling issue, or tends to defeat the rights asserted by one or the other of the parties or sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical and reasonable inference with respect to the matter or principal fact in issue, is relevant. Fallon, Trial Handbook for Louisiana Lawyers, sec. 142.
One of the principal issues in this case is whether the original criminal charges were politically motivated and therefore malicious. Dean has alleged that he was at odds with District Attorney Rowley, who was the school board's legal advisor. He has alleged that the defendants conspired to maliciously prosecute him. The trial court erred in not allowing Dean to attempt to lay a foundation for the existence or nonexistence of an entity known as the "Rowley Organization". If such an entity exists, it is relevant to discover whether or not the defendants acted in concert illegally or to prove malice for the purpose of malicious prosecution.

*1290 E. OFFER TO COMPROMISE CRIMINAL CASE
Plaintiff alleges the trial erred in excluding the plea bargaining discussions. He claims that the district attorney offered to drop the criminal charges if plaintiff would agree not to institute a civil suit against the defendants.
Offers of compromise and plea bargaining negotiations are inadmissible to prove liability. State Block, Inc. v. Poche, 444 So.2d 680 (La.App. 5th Cir.1984). Such offers are inadmissible because these communications are irrelevant. Furthermore, it is the judicial policy of this state to encourage settlements, compromises and guilty pleas. The purpose for this rule is to reduce the number of cases that go to trial in order to relieve court congestion and docket delay. The institutional benefits of excluding offers to settle far outweigh the limited benefit, if any, of prejudicing the fact-finder by disclosing the negotiating positions of the parties. Hence, the trial court properly excluded the evidence.
F. REFUSAL TO PERMIT AN EXPERT WITNESS TO TESTIFY
Dean qualified Dr. Cresap Watson, a professor of English, as an expert witness. The purpose of his testimony was to interpret the meaning of Dean's March 31, 1981 letter as to whether it violated LSA-R.S. 18:1463(B). The court refused to allow the witness to present his opinion on that issue.
The rules relating to expert testimony were recently discussed in Schwamb v. Delta Air Line, Inc. 516 So.2d 452 (La. App. 1st Cir.1987), which we adopt:
To warrant the use of expert testimony, two elements are required; these concern the subject of the expert's opinion or inference, and the qualifications of the tendered witness, respectively. First, "the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average layman." ... Second, "the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth." ... The inquiry is: "On this subject can a jury receive from this person appreciable help?" ... If not, the testimony is superfluous, and is excluded to save time and avoid confusion....
There are several variables which the trial judge should consider in deciding whether to admit expert testimony. First, the opinion rule operates to prefer more concrete description by a witness to the less concrete, the direct form of statement by a witness to the inferential. Second, the purpose for which testimony is admitted should have an effect upon the degree of concreteness required. If admitted as to collateral matters, evidence in general terms may be received with relative freedom. However, as to more crucial matters, approaching the hub of the issue before the fact-finder, concrete details rather than abstract references or opinions are required. Third, the preference for direct, concrete testimony and the reluctance to admit opinions and inferences as to matters crucially at issue are somewhat relaxed if the opinion or inference to be expressed may be classified as expert testimony....
Testimony in the form of an opinion or inference otherwise admissible should not be excluded solely because it embraces an ultimate issue to be decided by the trier of fact.... However, before such opinions can be admitted, expert testimony must be warranted and admissible, and its probative value must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence....
A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible; his judgment will not be disturbed on *1291 appeal unless manifestly erroneous.... 516 So.2d at 458-459.
In this case the trial judge was correct in refusing permission to the expert to opine if there was probable cause for instituting the criminal charges. The jurors were capable of reading the letter which was not beyond the understanding of the average layman, and the statute in question. They also would receive the law charges by the judge. Therefore, the opinion of the expert witness was unnecessary. The trial judge's ruling was correct.
G. CENSURE VOTE BY THE SCHOOL BOARD
Dean claims that the trial court improperly excluded testimony as to a vote by the defendant members of the school board on July 13, 1981, to censure Dean's conduct. The trial court concluded that the testimony was unrelated to the Dean letter or issues in the case. We have examined, as did the trial judge, the censure motion and agree that the resolution passed by the school board is entirely alien to any issue in this lawsuit and was properly excluded.
H. ADMISSION OF REASONS WHY THE CRIMINAL COURT FOUND NO PROBABLE CAUSE
The trial court dictated reasons for his conclusions why there was no probable cause for the criminal charges against Dean on November 3, 1981. This recitation was made in the presence of the Assistant District Attorney and all the school board defendants. Nevertheless, the district attorney continued to prosecute by setting the case for trial twice and dismissed the charges only on the day of trial.
On the morning of trial, the school board defendants filed a motion in limine to exclude statements by the court contained in the preliminary hearing transcript. They contended that their answer to a request for admission filed by plaintiff admitted the finding of no probable cause. Once they admitted that fact, they assert, the plaintiff can go no further because the probative value for the reasons stated by the trial court in the preliminary hearing is far outweighed by the prejudice to the defendants. They also claim the prejudice would be equal to the court directing a verdict as to no probable cause and malice. Further, if admitted, the court becomes a witness and subject to cross-examination, the defendants allege. They offered to stipulate that Dean was arrested, charged, that no probable cause was found and that the case was dismissed. The plaintiff did not accept this offer of stipulation.
Dean contends that since all of the defendants were present in open court when the judge rendered reasons for finding no probable cause they knew or should have known as average reasonable persons, that there was no probable cause. He says that the defendants were therefore in bad faith when they continued to prosecute him.
The trial court excluded its comments in the transcript on the grounds that:
the admissions requested and admissions answered constitutes a stipulation of the parties to the basic material facts....
La.C.C.P. art. 1468 provides for the effect of admissions, stating:
(a)ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.
Thus an admission eliminates the necessity of live witnesses to prove the fact admitted. However, an admission does not restrict a party from producing collateral evidence to that fact.
The judge properly excluded from the jury his reasons for finding no probable cause for an incorrect reason. The burden of proof in a criminal preliminary examination is different from the burden of proof in a civil proceeding. The judge's interpretation of the facts, the Dean letter in this case, may be factually or legally incorrect. The judge's comments on the facts, if introduced in the case at bar, would violate La.C.C.P. 1791 which holds:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an *1292 opinion as to what has been proved, not proved, or refuted.
The factual finding by the judge in the preliminary hearing in this case would usurp the function of the jury as the fact-finder because the jurors would probably accept without question the judge's reasoning and finding of fact because of his legal training, experience and position as a dispute resolver. This would prejudice the defendants' case and cause them irreparable harm.
II. MALICIOUS PROSECUTION CLAIM
In a malicious prosecution case, the plaintiff bears the burden of proving the following elements:
(1) The commencement or continuance of an original criminal or civil judicial proceeding.
(2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.
(3) Its bona fide termination in favor of the present plaintiff.
(4) The absence of probable cause for such proceeding.
(5) The presence of malice therein.
(6) Damage conforming to legal standards resulting to plaintiff.
Miller v. East Baton Rouge Parish Sheriff's Department, 511 So.2d 446 (La.1987). When there is a holding of no probable cause in a preliminary examination, a presumption arises of the want of probable cause. The defendant who instigated the prosecution has the burden of showing that he acted on probable cause and without malice. Robinson v. Rhodes, 300 So.2d 249 (La.App. 2d Cir. 1974).
In the Miller case, supra, the Supreme Court defined the standard of proof for probable cause and malice, as follows:
Chief among these elements is the requirement that the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued without "probable cause". Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense....
The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjecture will not suffice.... Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available.... The reputation of the accused, his opportunity to offer explanation, and the need for prompt action, if any, are all factors in determining whether unverified information furnishes probable cause.... 511 So.2d at 452-453.
All the school board defendants testified that they possessed an honest belief in Dean's guilt when they filed the criminal charges, based on their interpretation of his letter, the election statute and the advice they received from District Attorney Rowley. However, none testified regarding the continuation of the proceedings after the court found the absence of probable cause. Evidence as to whether the defendants acted as men of average caution when they filed the complaint and prosecuted Dean is incomplete. Also the jury was not provided with information about Dean's past and present reputation. These facts coupled with the procedural errors contributed to the jury's conclusion that the defendant School Board Members acted with probable cause and without malice.
The defendants must also prove the absence of malice, which is inferred when there is an absence of probable cause. Miller defined malice in malicious prosecution as follows:
It means something more than the fictitious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact.... Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice.... But it is not essential to prove such ill will. Malice is found when the defendant uses the *1293 prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime.... Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights.... Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. 511 So.2d 453.
The question of whether the defendants acted in reckless disregard of Dean's rights by filing and continuing the prosecution in this record is unclear because of the evidentiary ruling of the court. Furthermore, the political animus between the parties which was denied development in this record may support the malice requirement. Particularly significant is the fact that advice to institute criminal charges against Dean came from District Attorney Rowley, Dean's alleged political enemy, and from the candidate for judge Dean was not supporting.
III. PROSECUTORIAL IMMUNITY
Appellant's final argument is that the trial court committed manifest error in dismissing District Attorney Rowley on a motion for a directed verdict based on prosecutorial immunity and the absence of malice. The trial judge held:
The State of Louisiana has not fully met the question of prosecutorial immunity.... I have ruled against Mr. Dean ... so that this could be placed before the Court of Appeal........[The] evidence ... in no way, shape or form has proved any conspiracy between the original eight defendants and ... John F. Rowley. And no ill will or malice by competent evidence has been imputed to Mr. Rowley. That being the case and the Court believing that twelve people cannot disagree on that. That being the case, the Court is directed (sic) the verdict in favor of Mr. Rowley, in his individual capacity, and has granted exproprio moto and in connection with the motion of Mr. Rowley's counsel on the prosecutorial immunity, that he must be let out of this case, that he is immune from suit and the Court has so ruled.
District Attorney Rowley testified on cross-examination that he was first notified over the telephone about the Dean letter and that the first time he saw the letter was when Mr. Nunez came to his office with it, sometime after March 31, 1981. Mr. Rowley stated he looked up the election code and believed that there was probable cause for the Justice of the Peace to accept a charge against Dean. Thereafter he filed an eight count bill of information against Dean and continued the prosecution after a court found no probable cause for the charges.
Prosecutorial immunity has not been analyzed by the La. Supreme Court. Suits for malicious prosecution against district attorneys have been permitted. Cerna v. Rhodes, 341 So.2d 1157, 1159 (La. App. 1st Cir.1977); Crier v. City of New Orleans, 365 So.2d 35 (La.App. 4th Cir. 1978); Hall v. City of New Orleans, 385 So.2d 1253 (La.App. 4th Cir.1980). In Foster v. B.B. Powdrill, 463 So.2d 891 (La. App. 2d Cir.1985), the court held that a district attorney may be immune from civil liability in a suit for false arrest and imprisonment based on negligence, absent allegations and proof of malice. It held that district attorneys may be sued for malicious prosecutions. We agree that district attorneys enjoy a qualified immunity, but are not immunized from suits for malicious prosecution.
Dean has alleged the district attorney acted with malice. He claims that because of their political enmity the district attorney caused him to be falsely charged and then refused to dismiss the charges after the judge found no probable cause. These are fact issues which the jury should decide.
Jurisprudence dictates that a "motion for a directed verdict is appropriately granted *1294 in a jury trial when after considering all evidentiary inferences in light most favorable to the movant's opponent, it is clear that the facts and inferences redound so overwhelmingly in favor of granting a verdict, that reasonable jurors could not arrive at a contrary conclusion." Moore v. Aetna Cas. and Sur. Co., 454 So.2d 1273 (La. App.2d Cir.1984). The court in the instant case erred in granting the directed verdict.
IV. CONCLUSION
We find that the errors herein deprived the plaintiff of his right to a fair jury trial. We acknowledge our responsibility to render a judgment when the record is complete. La.C.C.P. art 2164. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280 (La. 1985). However, this record is incomplete because of the errors referred to above. Accordingly the judgment is reversed and the case remanded for another jury trial. Assessment of cost is deferred until a final determination of the merits.
REVERSED AND REMANDED
BARRY, Judge, concurs in the reversal.
I find that the improper allocation of juror challenges deprived the plaintiff of his fundamental right to a fair trial and impartial jury, Smith v. State Farm Ins. Co., 446 So.2d 1269 (La.App. 4th Cir.1984).
ON APPLICATION FOR REHEARING
PLOTKIN, Judge.
We granted a rehearing in order to review our original opinion relating to District Attorney Jack Rowley, in which we held that the trial court erred in granting a directed verdict in favor of Rowley.
As a general rule, prosecutors enjoy quasi-judicial immunity which extends to acts committed in the performance of duties constituting an integral part of the judicial process. It is derived from judicial immunity and is based on the policy that the prosecutor's office should be independent.
Prosecutorial immunity is not absolute. One exception from prosecutorial immunity is malicious prosecution. Cerna v. Rhodes, 341 So.2d 1157 (La.App. 1st Cir.1977), cert. denied 343 So.2d 1067 (La.1977); Crier v. City of New Orleans, 365 So.2d 35 (La. App. 4th Cir.1978); Hall v. City of New Orleans, 385 So.2d 1253 (La.App. 4th Cir. 1980); Foster v. Powdrill, 463 So.2d 891 (La.App. 2d Cir.1985).
In this case, Jack Rowley, in his capacity as district attorney, did the following:
1. Responded with legal advice to an inquiry from a school board member as to whether Dean's letter violated LSA-R. S. 18:1463(B).
2. Filed a bill of information against the plaintiff, for violating LSA-R.S. 18:1463(B), after various school board members (the defendants herein) filed criminal affidavits with the Justice of the Peace.
3. Participated in a preliminary evidentiary hearing, through an assistant district attorney, which resulted in a holding that no probable cause existed to prosecute the plaintiff.
4. Thereafter, continued to prosecute the plaintiff by setting the case for trial on the merits.
5. Over plaintiff's objection, requested and received a continuance of the trial date.
6. On the trial date, caused the charges against the plaintiff to be nolle prossed. Plaintiff objected, claiming that they should have been dismissed with prejudice to prevent the district attorney from being able to recharged him within one year.
The elements of malicious prosecution which the plaintiff must prove are:
1. The commencement of or continuance of an original criminal or civil proceeding.
2. Its legal causation by the present defendant against plaintiff who was a defendant in the original proceedings.
3. Its bona fide termination in favor of the present plaintiff.
4. The absence of probable cause for such proceeding.

*1295 5. The presence of malice therein.
6. Damage conforming to legal standards resulting to the plaintiff.
Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La. 1987), writ denied, 524 So.2d 520 (La.1988).
There is no dispute that, as to Rowley, the plaintiff has proved elements 1, 2 and 3. The question is whether elements 4, 5 and 6 have been proved. Specifically, the issues concern whether the finding of no probable cause by the trial court at the preliminary hearing satisfied the "absence of probable cause" requirement and whether the plaintiff proved malice and damages.
The standard for directing a verdict is that after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences redound so overwhelmingly in favor of granting a verdict that reasonable jurors could not arrive at a contrary conclusion. Moore v. Aetna Casualty & Surety Co., 454 So.2d 1273 (La.App. 2d Cir. 1984); Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La.App. 4th Cir.1983), writ denied 433 So.2d 1053 (La. 1983).
The district attorney's decision to set the case for trial despite the trial court's preliminary hearing ruling of no probable cause falls within the discretion and authority of his office. No legal prohibition prevents the district attorney from proceeding with the prosecution.
However, when, as in the instant case, the district attorney elects to continue to prosecute a defendant, despite a direct ruling of no probable cause from a court, the factual question of whether probable cause actually exists arises. Thus, the plaintiff here presented prima facie evidence of the fourth element of malicious prosecution.
The trial judge found no evidence of malice by the district attorney and directed a verdict. The Louisiana Supreme Court has defined the standard of proof required for malice as follows:
[M]alice does not submit readily to definition. It means something more than the fictitious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other persons's rights.
Miller, supra.
We find no evidence of malice committed by District Attorney Rowley in the instant case. There is no indication that he used the prosecution against the plaintiff to gain a private advantage, as defined by Miller. The fact that malice may be inferred by the lack of probable cause does not result in an automatic presumption that continued prosecution subsequent to such a finding was motivated by malice. We do not find grounds for such an inference in the district attorney's actions in this case.
Because we find no evidence of malice, we pretermit discussion of the damage issue.
For the reasons assigned, we amend our original opinion to affirm that part of the district court's judgment granting a directed verdict in favor of John F. Rowley and dismissing plaintiff's suit against him. Otherwise, our original decree setting aside the judgment against the other defendants remains intact.
AMENDED AND AFFIRMED.
NOTES
[1] The school board defendants are Hillary J. Nunez, Herman F. Bersuder, Martin Campo, Floyd J. Landry, John R. Lane, Robert J. Michel, Leon Perniciaro and Kenneth J. Rabalais. Defendants Michel and Perniciaro were severed from the trial due to illness.